2000 UT 81

**DAIRY PRODUCT SERVICES, INC., a corporation, Plaintiff and Appellant,**

v.

**CITY OF WELLSVILLE, Defendant and Appellee.**

No. 981442.

Supreme Court of Utah.

Oct. 3, 2000.

---

N. George Daines, Christopher L. Daines, Logan, for plaintiff.

James C. Jenkins, Bruce L. Jorgensen, Logan, for defendant.

RUSSON, Associate Chief Justice:

¶1 Dairy Product Services, Inc. ("DPSI"), appeals the district court's decision granting summary judgment and ordering injunctions in favor of Wellsville City ("Wellsville"). The decision upheld Wellsville's action refusing to renew DPSI's business license and also enjoined DPSI from operating without a business license and from operating in violation of Wellsville's nuisance ordinances.

## BACKGROUND

¶2 DPSI operates a dairy processing facility within the city limits of Wellsville. The facility began operations as Magic Valley Milk Producers early in 1989, and DPSI purchased it in October 1989.

¶3 Shortly thereafter, Wellsville charged that DPSI's wastewater was burdening the city's wastewater treatment works. As a result, the city imposed a water service penalty and threatened to discontinue DPSI's water service if the penalty was not paid. DPSI was dependant on Wellsville water for the operation of its plant, and discontinuation of service would have resulted in the plant's closure.

¶4 Therefore, on August 2, 1994, DPSI filed a complaint asking the court to enjoin Wellsville from collecting the water service penalty and from discontinuing water service. The court granted the injunction based on the terms of a stipulation between the two parties. Thereafter, as a result of further negotiations and stipulations, DPSI constructed an on-site water treatment plant that began operating in June 1995. However, no final order was issued disposing of the suit.

¶5 As early as the spring of 1991, the city council notified DPSI that the citizens of Wellsville had begun to complain to city officials about offensive odors emanating from the DPSI facility. Written notification of these complaints was given to DPSI as part of the negotiations previously mentioned, whereby measures to reduce the smells were included in the stipulations. However, com-

plaints from Wellsville citizens allegedly continued even after DPSI constructed its wastewater facility and undertook the stipulated preventive measures.

¶ 6 Wellsville issues business licenses on a basis of yearly renewal with all licenses expiring on December 31 of each year. Renewal for the upcoming year is automatic unless the city elects not to renew an applicant's license. In December 1995, Wellsville city officials notified DPSI that at the regularly scheduled January 10, 1996, town meeting, the Wellsville City Council intended to deny DPSI's application to renew its business license. The notice stated that the denial would be based on a nuisance violation and DPSI's failure to take appropriate measures to eliminate the offensive smells. The notice instructed DPSI that it had a right to appear, be represented by counsel, hear evidence, cross-examine witnesses, and present evidence as to why DPSI's business license renewal application should not be denied.

¶ 7 At the January 10 meeting, after much discussion among DPSI, the council, and the public, the council voted to table the issue of DPSI's business license for two weeks, until the next council meeting. A committee was formed between DPSI and some council members to devise a plan of action to eliminate the odors. The action plan was to be presented at the next council meeting.

¶ 8 On January 24, the committee reported that it had hired an environmental engineer at DPSI's expense to help find the cause of the odors and then to make recommendations to resolve the problem. In addition, the committee promised to provide the council with a progress report every two weeks. The council voted to delay reissuing DPSI's business license until DPSI and the council were satisfied that progress was evident.

¶ 9 Nevertheless, the odors from DPSI's facility allegedly continued as did complaints from Wellsville citizens. In September 1996, Wellsville served notice to DPSI that the council intended to deny DPSI's business license renewal application at the next town meeting, to be held October 9, 1996. The notice provided that DPSI could be represented by counsel, hear evidence against DPSI, cross-examine witnesses, and present evidence favorable to DPSI.

¶ 10 At the October meeting, DPSI was represented by a company official and an attorney. The minutes reflect that the DPSI attorney was instructed that he was free to cross-examine any witness. Several council members from the committee presented information regarding the odors. It appears from the minutes that DPSI questioned only one of these witnesses. Then the mayor opened the meeting for public comment from the audience with each participant limited to two minutes. Once again, the minutes reflect that DPSI questioned only one of the citizens providing public comment. Thereafter, DPSI's representatives presented their case, asking for more time to resolve the odor problem. Because the issue was the subject of litigation, the council voted to adjourn into executive session with Wellsville's attorney for deliberation. After approximately twenty-five minutes, the council returned and voted unanimously (1) that DPSI's operation was a nuisance that should be abated or controlled, and (2) to deny DPSI's business license renewal application pursuant to Wellsville City Ordinance § 5.36.040.

¶ 11 However, DPSI allegedly continued operating its facility without a business license. Consequently, in December of 1996, Wellsville filed a counterclaim to DPSI's original 1994 action. In the counterclaim, Wellsville requested that the court enforce abatement of the odor nuisance by enjoining DPSI from operating without a business license. DPSI countered that its business license was a property interest and Wellsville's proceeding had not afforded DPSI the required due process. Therefore, DPSI asked the court to conduct a judicial determination as to whether DPSI was a nuisance and to enjoin Wellsville from taking any action regarding DPSI's business license. Thereafter, Wellsville and DPSI each filed motions for summary judgment.

¶ 12 The district court granted Wellsville's motion for summary judgment and denied DPSI's motion. The court concluded that as a matter of law, Wellsville is authorized to declare what is a nuisance, as well as to

abate such nuisance, and that Wellsville followed correct procedures in determining that DPSI was in violation of Wellsville's nuisance ordinances. Furthermore, the court held that Wellsville had the authority to refuse to renew DPSI's business license and Wellsville did not act arbitrarily or capriciously when it did so.

¶ 13 In addition, the court enjoined DPSI from operating its business without a license and from operating its business in such a manner as to be a nuisance as defined by Wellsville ordinances. However, on June 26, 1998, the district court issued a stay of injunction so that DPSI could operate its facility pending application for a business license. DPSI then appealed the summary judgment and order of injunction.

¶ 14 Appealing the district court's decision to grant summary judgment in favor of Wellsville, DPSI argues that (1) the court erred in concluding that section 78–38–5 [1] of the Utah Code did not apply to DPSI's situation; (2) Wellsville acted outside its powers when it declared DPSI a nuisance and refused to renew DPSI's business license; and (3) DPSI was denied due process in the business license proceedings. In addition, in appealing the district court's orders of injunction, DPSI argues that (1) the court abused its discretion by issuing permanent injunctions based on Wellsville's decision rather than conducting a trial on the merits, and (2) the court erred by not being specific in the terms of the injunctions imposed.

## STANDARD OF REVIEW

¶ 15 Summary judgment is appropriate only when there is a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c); Tretheway v. Miracle Mortgage, Inc., 2000 UT 12, ¶ 7, 995 P.2d 599. In reviewing the trial court's decision to grant summary judgment, we give the court's legal decisions no deference, reviewing for correctness, while reviewing the facts and inferences to be drawn therefrom in the light most favor-

able to the nonmoving party. See Tretheway, 2000 UT 12 at ¶ 2, 995 P.2d 599.

¶ 16 Furthermore, "[w]hen reviewing a trial court's grant of an injunction, we are generally careful not to disturb the ruling unless the court abused its discretion or rendered a decision clearly against the weight of the evidence." Aquagen Int'l, Inc. v. Calrae Trust, 972 P.2d 411, 412 (Utah 1998). We consider whether the trial court exercised its discretion using sound equitable principles based on all of the facts and circumstances. See id. at 412–13.

## ANALYSIS

### I.  APPLICABILITY OF UTAH CODE ANN. § 78–38–5

¶ 17 DPSI claims on appeal that section 78–38–5 of the Utah Code renders void Wellsville's declaration that DPSI's operation is a nuisance. DPSI argues that genuine issues of material fact exist as to whether it qualifies as a manufacturing facility protected by the statute's limitation on the application of local nuisance ordinances. DPSI maintains that section 78–38–5 protects DPSI's operation even if the facility has changed hands or operations have changed.

¶ 18 Wellsville counters that section 78–38–5 is not applicable to DPSI because Wellsville claims it found that the nuisance resulted from a change in the operations within DPSI's plant that increased the odors to the point of becoming a nuisance. Additionally, Wellsville argues that DPSI was in operation for less than three years, thus failing to qualify for the protection of section 78–38–5.

¶ 19 Section 78–38–5 provides:

(1) Notwithstanding Sections 78–38–1 and 76–10–803, no manufacturing facility or the operation thereof shall be or become a nuisance, private or public, *by virtue of any changed conditions in and about the locality thereof after the same has been in operation for more than three years when such manufacturing facility or the operation thereof was not a nuisance at the time the operation thereof began;* provided, the

---

1.  Section 78–38–5 states that local nuisance ordinances shall not apply to manufacturing facilities

in operation for more than three years. See Utah Code Ann. § 78–38–5 (1996).

manufacturing facility does not increase the condition asserted to be a nuisance and that the provisions of this subsection shall not apply whenever a nuisance results from the negligent or improper operation of any such manufacturing facility.

. . . .

(3) Any and all ordinances now or hereafter adopted by any county or municipal corporation in which such manufacturing facility is located, which makes the operation thereof a nuisance or providing for an abatement thereof as a nuisance in the circumstances set forth in this section are null and void; provided, however, that the provisions of this subsection shall not apply whenever a nuisance results from the negligent or improper operation of any such manufacturing facility.

Utah Code Ann. § 78–38–5 (1996) (emphasis added).

¶ 20 When we interpret a statute, we must look first to the statute's plain language to determine the legislative intent and we look no further if the language is unambiguous on its face. *See State v. Burns*, 2000 UT 56, ¶ 25, 4 P.3d 795.

¶ 21 The plain language of section 78–38–5 clearly shows that the legislature has provided limited protection from nuisance claims only when those claims were prompted by a change in the conditions of the area surrounding a facility. In addition, the statute provides protection only when such a facility has been operating for more than three years and the facility was not a nuisance when the operation began.

¶ 22 In the instant case, Wellsville provided an affidavit of the city recorder attesting to having researched the parcels of real property in the one-and-one-half-block radius surrounding DPSI's facility. The city recorder found that most of the homes in this area were constructed and in place before the facility began operations in early 1989. In addition, the city recorder attested that the individuals who had kept records of the odors and who were prepared to serve as witnesses all lived in homes that had been constructed before 1982.

¶ 23 DPSI responded to Wellsville's motion for summary judgment and accompanying affidavits by merely declaring that section 78–38–5 of the Utah Code renders Wellsville's nuisance ordinance and declaration null and void. DPSI then asserts on appeal that because this is an appeal from summary judgment, the statements in the record must be viewed in the light most favorable to DPSI.

¶ 24 However, DPSI does not understand its burden to preclude an entry of summary judgment. Summary judgment

shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Utah R. Civ. P. 56(c). In addition,

[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Id.* 56(e). "Bald statements do not suffice to establish a genuine issue of material fact." *In re Smith*, 925 P.2d 169, 174 (Utah 1996); *see also Jensen v. IHC Hosps., Inc.*, 944 P.2d 327, 339 (Utah 1997); *Schnuphase v. Storehouse Mkts.*, 918 P.2d 476, 477–78 (Utah 1996).

¶ 25 The record shows without dispute that the community did not move to the nuisance, but rather, the area surrounding DPSI's facility was already populated when the odor nuisance began. In addition, a new process involving beef concentrate was started in early 1991, and the record indicates that an odor problem was anticipated by DPSI officials at that time. Therefore, there was no genuine issue before the district court that the nuisance did not arise by virtue of a change in the conditions surrounding the facility.

¶ 26 We hold, therefore, that the district court correctly determined that as a matter

of law, Utah Code Ann. § 78–38–5 did not apply to protect DPSI.

## II.  ULTRA VIRES

¶ 27 DPSI claims on appeal that Wellsville's finding that DPSI's business is a nuisance is a special law directed only against DPSI. DPSI further argues that Wellsville's general powers are strictly limited by section 10–8–84 of the Utah Code and that Wellsville overstepped its limitations by denying renewal of DPSI's business license on the basis of nuisance.

### A.  Special Law

■■■ ¶ 28 The Utah Constitution provides that "[n]o private or special law shall be enacted where a general law can be applicable." Utah Const. art. VI, § 26. However, DPSI's special law argument is misplaced.

"A general law applies to and operates uniformly upon all members of any class of persons, places, or things requiring legislation peculiar to themselves in the matters covered by the laws in question.  On the other hand, special legislation relates either to particular persons, places, or things or to persons, places or things which, though not particularized, are separated by any method of selection from the whole class to which the law might, but for such legislation, be applied. . . .  The constitutional prohibition of special legislation does not preclude legislative classification, but only requires the classification to be reasonable."

*Colman v. State Land Bd.,* 795 P.2d 622, 636 (Utah 1990) (quoting *Utah Farm Bureau Ins. Co. v. Utah Ins. Guar. Ass'n,* 564 P.2d 751, 754 (Utah 1977)).

■■■ ¶ 29 Wellsville found that DPSI's facility violated its nuisance ordinances, and then, pursuant to the Wellsville ordinance for controlling offensive businesses, Wellsville refused to renew DPSI's business license.  A finding that a particular person or entity violated a statute or an ordinance is not the equivalent of a statute or an ordinance written to apply to a particular person or entity.

Therefore, DPSI's special law argument is unfounded.

### B.  Utah Code Ann. § 10–8–84

■■■ ¶ 30 There is no question that cities have no inherent sovereign power but only those powers granted by the state legislature.  *See Triangle Oil, Inc. v. North Salt Lake Corp.,* 609 P.2d 1338, 1339 (Utah 1980); *Call v. City of West Jordan,* 606 P.2d 217, 218 (Utah 1979); *see also Consolidation Coal Co. v. Emery County,* 702 P.2d 121, 123 (Utah 1985).  However, cities have not only those powers expressly granted to them, but also "those necessarily implied to carry out such responsibilities." *Call,* 606 P.2d at 219; *see also Triangle Oil,* 609 P.2d at 1339. These necessarily implied powers derive from the general welfare clause, section 10–8–84, which provides:

(1) The municipal legislative body may pass all ordinances and rules, and make all regulations, not repugnant to law, necessary for carrying into effect or discharging all powers and duties conferred by this chapter, and as are necessary and proper to provide for the safety and preserve the health, and promote the prosperity, improve the morals, peace and good order, comfort, and convenience of the city and its inhabitants, and for the protection of property in the city.

(2) The municipal legislative body *may* enforce obedience to the ordinances with fines or penalties in accordance with Section 10–3–703.

Utah Code Ann. § 10–8–84 (2000) (emphasis added).  This grant of general authority may be limited by a specific grant of power, but any specific grant of power "should generally be construed with reasonable latitude in light of the broad language of the general welfare clause." *State v. Hutchinson,* 624 P.2d 1116, 1126 (Utah 1980).

■■■ ¶ 31 Therefore, pursuant to the section 10–8–84 general welfare clause, cities have independent authority, apart from the specific grants of authority, to pass ordinances reasonably related to the objectives of the granted authority. *See id.*  As long as the legislature has not specifically limited the powers of the cities, *see Harding v. Alpine*

*City,* 656 P.2d 985, 986 (Utah 1982) (per curiam), we will not interfere with the means selected to carry out the granted authority "unless it is arbitrary, or is directly prohibited by, or is inconsistent with the policy of, the state or federal laws or the constitution of this State or of the United States," *Hutchinson,* 624 P.2d at 1126.

¶ 32 City councils have been granted the authority to regulate businesses within the city limits through business licensing and ordinances. *See* Utah Code Ann. § 10–1–203(2) (Supp.2000); *see also id.* § 10–3–702 (1999); *Consolidation Coal Co.,* 702 P.2d at 123 (licensing may be imposed "primarily as a means of regulating businesses[ ] as an exercise of [a city's] police powers"); 9 Beth A. Buday & Julie Rozwadowski, *McQuillen Municipal Corporations* § 26.84, at 273 (3d ed. rev.1995) ("[G]rounds for revocation are . . . violations of ordinances or law authorizing or regulating the license. . . ."); 2 Sandra M. Stevenson, *Antieau on Local Government Law* § 27.16, at 27–61 (2d ed. 1999) ("Local governments generally may refuse to renew licenses . . . whenever such action is reasonably necessary to protect the public health, safety or the general welfare.").

■ ¶ 33 Pursuant to this authority, Wellsville enacted an ordinance that provides in pertinent part:

> Any license issued pursuant to the provisions of this code or of any ordinance of the city may be revoked and any application denied by the governing body because of:
>
> 1. The failure of the licensee or applicant to comply with the conditions and requirements of this code or any ordinance of the city. . . .

Wellsville City Ordinance § 5.04.100(A).

¶ 34 Furthermore, the state legislature has granted city councils the authority to "declare what shall be a nuisance, and abate the same, and impose fines upon persons who may create, continue or suffer nuisances to exist." Utah Code Ann. § 10–8–60 (1999); *see also* 2 *Antieau, supra* ¶ 32, § 29.07[2], at 29–57 (local governments generally have authority to regulate anything about which there could be difference of opinion as to whether it is considered nuisance). In addition to this general authority to control nuisances, the state legislature has provided authority with respect to dairies and other "offensive businesses." In particular, the city councils may "regulate the management . . . of . . . dairies . . . in and within one mile of the limits of the corporation," Utah Code Ann. § 10–8–66 (1999), as well as "prohibit any offensive, unwholesome business or establishment in and within one mile of the limits of the corporation," *id.* § 10–8–67; *see also Monroe City v. Arnold,* 22 Utah 2d 291, 293, 452 P.2d 321, 322 (1969) (holding that statute gives city authority to deal with public nuisance by legislative or equitable means and upholding lower court's decision to enjoin operation of hog farm); 2 *Antieau, supra* ¶ 32, § 29.07[2], at 29–57 ("[L]ocal governments have wide discretion in declaring various activities, conditions and structures to be nuisances *within the particular circumstances prevailing* within their community. . . ."); 58 Am.Jur.2d *Nuisances* § 190 (1989) (dairies may be considered nuisances when operated so as to seriously disturb nearby residents with emission of fumes or smells).

¶ 35 Pursuant to this granted authority, Wellsville has defined a nuisance as "whatever renders soil, air, water, or food impure or unwholesome," Wellsville City Ordinance § 8.28.010(A), and a public nuisance as "unlawfully doing any act . . . which act . . . [a]nnoys, injures, or endangers the comfort, repose, health or safety of three or more persons," *id.* § 8.28.210(A). In addition, Wellsville has provided that "any public nuisance, *the punishment for which is not otherwise prescribed,* . . . is . . . a Class B misdemeanor." *Id.* § 8.28.220 (emphasis added).

¶ 36 Moreover, Wellsville's offensive business ordinances provide:

> If the governing body determines that the continuation of the business or facility has become a nuisance to persons situated within the city limits or that ample control is not being exercised to minimize the creation of excessive odors, . . . *it shall notify the owner or operator thereof that the governing body is considering revoking or modifying the operator's license.*

*Id.* § 5.36.030(A) (emphasis added). Furthermore,

> [u]pon a determination by the governing body that the business or facility is a nuisance, *it shall have power to order the abatement or removal of the facility or establishment.* If the owner fails to conform to such order, the governing body shall have power to bring all necessary legal proceedings to force removal, abatement, or adherence to standards.

*Id.* § 5.36.040(E) (emphasis added). Wellsville has defined offensive businesses to include dairies and any other enterprise that creates excessive odors or fumes. *Id.* § 5.36.010(B).

¶ 37 As stated above, the general authority of section 10–8–84 may be limited by a specific grant of power but the specific grant should be generally construed. *See Hutchinson*, 624 P.2d at 1126. Furthermore, under section 10–8–84, cities have independent authority, apart from the specific grants of authority, to pass ordinances reasonably related to the objectives of the granted authority. *See id.*

¶ 38 Accordingly, cities in Utah have been granted the specific authority to regulate businesses within their city limits through licensing. In addition, Utah cities have been granted the specific authority to define nuisances and to regulate the management of, or even prohibit, dairies and other offensive businesses in or within one mile of the city limits. It follows, therefore, that cities have been granted the specific authority to pass ordinances to regulate, by means of business licensing, offensive businesses that have become nuisances. *Cf. Ogden City v. Eagle Books, Inc.*, 586 P.2d 436, 437 (Utah 1978) (recognizing Ogden City's authority to pass ordinance that revokes business license upon conviction of licensee).

¶ 39 Pursuant to the legislature's specific grants of authority, therefore, Wellsville has legislated that business licenses may be revoked or denied for failure to comply with the conditions and requirements of any city ordinances. Wellsville has also legislated

that offensive businesses shall be regulated through business licensing and that the city council has the authority to revoke [2] the business license of an offensive business that has become a nuisance. Because Wellsville's authority to regulate offensive businesses has not been specifically limited by the legislature, and the means Wellsville has used to regulate are not "arbitrary, or ... directly prohibited by, or ... inconsistent with the policy of, the state or federal laws or the constitution of this State or of the United States," we will not interfere. *Hutchinson*, 624 P.2d at 1126.

¶ 40 Therefore, we hold that the district court did not err in concluding that Wellsville acted within its authority by denying renewal of DPSI's business license pursuant to the Wellsville offensive business ordinances.

### III. REVIEW OF WELLSVILLE'S DECISION

¶ 41 DPSI next claims the district court abused its discretion by issuing permanent injunctions based on review of Wellsville's decision rather than granting DPSI a trial on the merits. Wellsville counters that because it brought its claim for injunctive relief only as a means of enforcement for nuisance abatement, two separate but related issues were before the court: (1) whether the Wellsville City Council's decision was within lawful authority and not arbitrary or capricious, and (2) whether an injunction was an appropriate remedy.

¶ 42 It is well established that when courts review the actions of an administrative body, that body's actions are " 'endowed with a presumption of correctness and validity which the courts should not interfere with unless it is shown that there is no reasonable basis to justify the action taken.' " *Xanthos v. Board of Adjustment*, 685 P.2d 1032, 1034 (Utah 1984) (quoting *Cottonwood Heights Citizens Ass'n v. Board of Comm'rs*, 593 P.2d 138, 140 (Utah 1979)); *see also Springville Citizens for a Better Community v. City of Springville*, 1999 UT 25, ¶ 24, 979

---

**2.** Grounds for revocation are usually also considered grounds for refusal to renew. *See* 9

*McQuillen, supra* ¶ 32, § 26.11, at 33.

P.2d 332 (ruling that review of municipality's action is based on whether, in light of *evidence before municipality*, reasonable minds could reach same conclusion); 2 *Antieau*, *supra* ¶ 32, § 29.07[2], at 29–59 (majority of courts presume that local government legislation is valid and constitutional). "Judicial review of license revocations by municipalities is limited to a determination whether the municipality acted within its lawful authority and in a manner that is not arbitrary or capricious." *Whiting v. Clayton*, 617 P.2d 362, 364 (Utah 1980); *see also Triangle Oil, Inc. v. North Salt Lake Corp.*, 609 P.2d 1338, 1340 (Utah 1980) (holding that courts will not interfere with action of city council unless action is outside authority or deemed capricious or arbitrary); *Peatross v. Board of Comm'rs*, 555 P.2d 281, 284 (Utah 1976) (holding that reviewing court will not interfere unless lower tribunal's action was outside scope of authority or deemed capricious and arbitrary and thus licensee was not entitled to trial de novo). In its review, the district court must not weigh the evidence anew but, instead, must determine whether the record discloses a reasonable basis for the municipality's decision. *See Springville Citizens*, 1999 UT 25 at ¶ 24, 979 P.2d 332; *Xanthos*, 685 P.2d at 1035.

¶ 43 Therefore, we agree with Wellsville's characterization of the proceedings. As a result, we will review the district court's grant of summary judgment on the basis of its conclusions that Wellsville acted within its lawful authority and Wellsville's decision was not arbitrary or capricious. We will separately review the district court's grant of injunction as an appropriate remedy. *See infra* part V.

¶ 44 First, we have already established that Wellsville was within its specifically granted authority to refuse to renew DPSI's business license in view of Wellsville's ruling that DPSI violated the Wellsville nuisance ordinances. *See supra* part II. Therefore, we look to whether DPSI raised any genuine issue as to whether Wellsville's action was arbitrary or capricious.

¶ 45 The record shows that the city council began to receive complaints of "terrible smells" as early as the spring of 1991.

Wellsville and DPSI negotiated and stipulated to measures that would hopefully abate these odors. However, the smells continued. In January of 1996, the city council reviewed whether to renew DPSI's business license. The council considered denying renewal at that time but agreed to work further with DPSI on the issue. A joint committee was formed to investigate and eliminate the odor problem. Nevertheless, the odors continued, and after nine months of continuing complaints, the city council once again held a hearing to consider whether to renew DPSI's business license. After a hearing in October 1996, the Wellsville City Council determined that the strong odors from DPSI's operations violated the Wellsville nuisance ordinances and therefore the council denied DPSI's business license renewal application.

¶ 46 The facts, even when taken in a light favorable to DPSI, indicate that Wellsville had worked with DPSI in good faith over an extensive period of time to resolve the odor problem. Since DPSI has shown no genuine issue as to any material fact that disputes the reasonableness of Wellsville's action, we hold that the district judge did not err in finding Wellsville's action to be neither arbitrary nor capricious. Therefore, summary judgment was appropriate as a matter of law.

## IV. DUE PROCESS

¶ 47 DPSI next claims that genuine issues of material fact exist as to whether DPSI was afforded due process in the business license renewal proceedings. In particular, DPSI raises issues regarding adequate notice, bias, opportunity to cross-examine, public deliberation by the council, a record of the deliberations, and a report of the findings. Each issue is addressed separately below.

¶ 48 The Utah Constitution provides that "[n]o person shall be deprived of life, liberty or property, without due process of law." Utah Const. art. I, § 7. Inasmuch as the licensing of a business represents a property interest, it should not be disrupted "without following fundamental standards of due process of law." *Anderson v. Utah County Bd. of County Comm'rs*, 589 P.2d 1214, 1216 (Utah 1979); *see also* 58 Am.

Jur.2d *Nuisances* § 57 (1989) (notice and opportunity for hearing are generally required when government acts to terminate existing land use activity).

■■■ ¶ 49 However, " 'due process is not a technical conception with a fixed content unrelated to time, place, and circumstances.' " *V–1 Oil Co. v. Department of Envtl. Quality,* 939 P.2d 1192, 1196 (Utah 1997) (quoting *Cafeteria Workers Union v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)). Instead, due process is flexible and, being based on the concept of fairness, should afford the "procedural protections that the given situation demands." *In re Worthen,* 926 P.2d 853, 876 (Utah 1996) (quotations omitted); *see also Rupp v. Grantsville City,* 610 P.2d 338, 341 (Utah 1980). The minimum requirements are adequate notice and an opportunity to be heard in a meaningful manner. *See V–1 Oil Co.,* 939 P.2d at 1197; *Worthen,* 926 P.2d at 876; *Lindon City v. Engineers Constr. Co.,* 636 P.2d 1070, 1075 (Utah 1981); *see also* 16C C.J.S. *Constitutional Law* § 968, at 257–63 (1985); 6A *McQuillen, supra* ¶ 32, § 24.77, at 218 ("[W]here defendants have had notice of hearing before a council and judicial review of its action, they have had all that they are entitled to procedurally with respect to an ordinance declaring their property to be a nuisance and ordering the removal of the same."). To be considered a meaningful hearing, the concerns of the affected parties should be heard by an impartial decision maker. *See V–1 Oil Co.,* 939 P.2d at 1197. In addition, a record is helpful to allow for judicial review, though where not available or complete, the reviewing court must be allowed to determine the facts to ensure due process was given. *See Xanthos v. Board of Adjustment,* 685 P.2d 1032, 1034 (Utah 1984); *Peatross v. Board of Comm'rs,* 555 P.2d 281, 284 (Utah 1976); *Denver & Rio Grande W. R.R. Co. v. Central Weber Sewer Improvement Dist.,* 4 Utah 2d 105, 109, 287 P.2d 884, 886–87 (1955); *see also Child v. Salt Lake City Civil Serv. Comm'n,* 575 P.2d 195, 196 (Utah 1978).

### A. Adequate Notice

■■ ¶ 50 Wellsville issues business licenses on a basis of yearly renewal with all licenses expiring on December 31 of each year. The licenses automatically renew at the beginning of the next year unless the city elects not to renew an applicant's license. Wellsville has set forth the notice that is required before the city will revoke or refuse to renew a business license as follows:

> [T]he licensee or applicant shall be given a notice which shall state in substance that the governing body intends to revoke the business license or deny the application to renew, together with the reason or reasons therefor, at a regular or special meeting of the governing body (which shall be at least ten days and not more than thirty days from the date notice is sent) and that the licensee or applicant has a right to appear, to be represented by counsel, to hear the evidence against him, to cross-examine witnesses and to present evidence as to why the license should not be revoked or the application denied.

Wellsville City Ordinance § 5.04.100(B). The record shows that Wellsville sent DPSI a formal notice on September 25, 1996, that DPSI's business license renewal application was being considered for denial at the public hearing to be held October 9. The notice provided the reasons Wellsville intended to deny the renewal application. The notice cited the applicable ordinances and presented a history of the issue. DPSI was notified that it had a right to appear, be represented by counsel, hear evidence against it, cross-examine witnesses, and present evidence on its own behalf.

¶ 51 This notice reasonably informed DPSI, in a timely fashion, of the specific issues DPSI was required to answer. It also afforded DPSI the opportunity to present any evidence or objections. DPSI offers no genuine issue regarding this notice. Therefore, we hold that the district court did not err in concluding that DPSI was served with adequate notice.

### B. Bias

■■■ ¶ 52 DPSI argues that Wellsville had determined before the hearing to deny renewal of DPSI's business license and that the Wellsville council members appeared biased.

"Where a party to an adversarial proceeding can demonstrate actual impermissible bias or an unacceptable risk of an impermissible bias on the part of a decision maker, the decision maker must be disqualified." *V–1 Oil Co.*, 939 P.2d at 1197. As we have previously noted in analyzing administrative proceedings, there are different categories of biasing influences. *See id.* Those categories are:

> "(1) A prejudgment or point of view about a question of law or policy, even if so tenaciously held as to suggest a closed mind, is not, without more, a disqualification. (2) Similarly, a prejudgment about legislative facts that help answer a question of law or policy is not, without more, a disqualification. (3) Advance knowledge of adjudicative facts that are in issue is not alone a disqualification for finding those facts, but a prior commitment may be. (4) A personal bias or personal prejudice, that is an attitude toward a person, as distinguished from an attitude about an issue, is a disqualification when it is strong enough and when the bias has an unofficial source.... (5) One who stands to gain or lose by a decision either way has an interest that may disqualify if the gain or loss to the decisionmaker flows fairly directly from her decision."

*Id.* at 1197 n. 6 (quoting Kenneth C. Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 9.8, at 68 (3d ed.1994)). A hearing by a municipal council being similar in stature to that of an administrative agency, we apply these categories in the case before us.

¶ 53 First, DPSI contends that prior to the hearing, a local newspaper announced that there would be a public meeting for the purpose of revoking or refusing to renew DPSI's business license and, therefore, that the council had predetermined its actions. However, " '[a] prejudgment or point of view about a question of law or policy, even if so tenaciously held as to suggest a closed mind, is not, without more, a disqualification.' " *Id.* In addition, publishing the notice of a public

meeting agenda in the local newspaper prior to a public hearing is a legal requirement.[3]

¶ 54 Second, DPSI asserts in an affidavit that the council members "appeared biased in their gestures, mannerisms, facial expressions, and comments." However, an affidavit in opposition to a motion for summary judgment must set forth specific facts that would be admissible in evidence in order to show there is a genuine issue for trial. *See* Utah R. Civ. P. 56(e); *Broadwater v. Old Republic Sur.*, 854 P.2d 527, 533 (Utah 1993); *Winter v. Northwest Pipeline Corp.*, 820 P.2d 916, 919 (Utah 1991); *Treloggan v. Treloggan*, 699 P.2d 747, 748 (Utah 1985) (per curiam); *Norton v. Blackham*, 669 P.2d 857, 859 (Utah 1983). An affidavit that merely reflects the affiant's unsubstantiated opinions and conclusions is insufficient to create an issue of fact. *See Winter*, 820 P.2d at 919; *Treloggan*, 699 P.2d at 748; *Williams v. Melby*, 699 P.2d 723, 725 (Utah 1985); *Norton*, 669 P.2d at 859.

¶ 55 DPSI provides no facts to support the affiant's opinion that the council appeared biased. No specific acts, words, or gestures are described or set forth. Therefore, DPSI's assertion, without more, that the council members appeared biased does not raise a genuine issue of fact as to whether the council demonstrated "actual impermissible bias or an unacceptable risk of an impermissible bias." *V–1 Oil Co.*, 939 P.2d at 1197. As a result, we hold that the district court did not err in finding that DPSI was not denied due process as a result of bias.

*C.   Whether DPSI's Attorney Was Denied Opportunity to Cross–Examine*

¶ 56 DPSI also claims by way of affidavit that its attorney "asked for and was denied the opportunity to cross-examine the[ ] witnesses" and thereby DPSI was denied due process. Once again, DPSI has made a conclusory statement unsupported by facts. *See Winter*, 820 P.2d at 919. The affiant did not provide any specific examples of DPSI's attorney making a request or of

---

**3.** The Utah Open and Public Meetings Act requires that the notice of all public meetings provide the agenda, date, time, and place of its meetings "to at least one newspaper of general

circulation within the geographic jurisdiction of the public body." Utah Code Ann. § 52–4–6(2), (3) (Supp.2000).

that request being denied. Neither did the affiant point to any objection made during the time of the meeting as to which ruling denied DPSI's attorney the opportunity to cross-examine. Absolutely no specific facts are given to support the conclusion that DPSI's attorney was denied the opportunity to cross-examine witnesses.

¶ 57 In fact, the record shows to the contrary. The minutes reflect that Wellsville's attorney "stated that [DPSI's attorney] will be able to cross-examine any of the witnesses." After the first witness testified, DPSI's attorney questioned the witness as to what he believed was the source of the smells. In addition, after the mayor opened the meeting to public comment, DPSI's attorney asked one of the citizens if he could distinguish between two different kinds of smells.

¶ 58 As stated before, to preclude summary judgment DPSI must respond to Wellsville's motion by setting "forth specific facts showing that there is a genuine issue for trial." Utah R. Civ. P. 56(e). DPSI has not met that burden. Therefore, the district court did not err in concluding that DPSI's argument had no merit and DPSI was not denied the opportunity to cross-examine witnesses at the business license proceedings.

### D. Open Meetings

¶ 59 DPSI also argues that due process requires that the council deliberate in public. "All meetings of the governing body of each municipality shall be held in compliance with the provisions of Title 52, Chapter 4 [Utah Open and Public Meetings Act], relating to open and public meetings." Utah Code Ann. § 10–3–601 (1999).[4] The Open and Public Meetings Act (the "Act") provides that "[e]very meeting is open to the public unless closed pursuant to Sections 52–4–4 and 52–4–5." Id. § 52–4–3 (1998). Section 52–4–4 provides that a closed meeting may be held upon an affirmative two-thirds vote of a quorum of the public body but that no closed meeting may be held "except as to matters exempted under Section 52–4–5;

provided, no ordinance, resolution, rule, regulation, contract, or appointment shall be approved at a closed meeting." Among the matters exempted under section 52–4–5 is any "strategy sessions to discuss pending or reasonably imminent litigation."

¶ 60 That being said, however, we have previously analyzed the Act as it relates to public bodies performing judicial duties and have held:

> [I]t is clear that the legislature intended that any official meeting of the [public body], wherein it performs the "information obtaining" phase of its activities, should not be held in private or in secret, but should be open to the public. However, once the "information obtaining" procedure has been completed, it is essential that during the "decision making" or judicial phase, those charged with that duty have the opportunity of discussing and thinking about the matter in private, free from any clamor or pressure, so they can calmly analyze and deliberate upon questions of fact, upon the applicable law, and upon considerations of policy, which bear upon the problems with which they are confronted.

*Common Cause of Utah v. Public Serv. Comm'n,* 598 P.2d 1312, 1315 (Utah 1979); *see also Andrews v. Board of Pardons,* 836 P.2d 790, 792–93 (Utah 1992) (per curiam) (finding judicial nature of board deliberations to be exempt from requirements of Utah Open and Public Meetings Act). Therefore, as long as the "information obtaining" procedures are conducted in the open and any final or formal action is announced or issued in the open, the "decision making" or deliberation of a public body during a judicial process may be held in private and is exempt from the requirements of the Act. *See Common Cause of Utah,* 598 P.2d at 1315.

¶ 61 Wellsville conducted the October 9, 1996, meeting in public and adjourned only for deliberation. After twenty-five minutes of deliberation, the council returned to the public forum and announced its decision and

---

4. The statute permitting executive sessions, section 10–3–602, was repealed by Municipal Public Meetings, ch. 28, § 3, 1979 Utah Laws 324.

final order in public. Therefore, we hold that the district court did not err in concluding that the Wellsville City Council did not violate DPSI's due process rights when the council deliberated in private.

## E.  Records

■ ¶ 62 Finally, DPSI argues that due process requires a record of the deliberations and a report of the findings. The Act requires that the written minutes that must be kept for all open meetings include, among other items, "the substance of all matters proposed, discussed, or decided, and a record, by individual member, of votes taken" and "the names of all citizens who appeared and the substance in brief of their testimony." Utah Code Ann. § 52–4–7(c), (d) (1998). However, as previously stated, the judicial deliberations of the Wellsville City Council are exempt from the requirements of the Act. Therefore, due process does not require a record of the Wellsville City Council deliberations but only of the public portion of the meeting.

■ ¶ 63 Unless otherwise required by law, the formal record of a public proceeding "consists of the minutes of the hearing and the formal findings and order." *Xanthos v. Board of Adjustment,* 685 P.2d 1032, 1034 (Utah 1984); *see also* 62 C.J.S. *Municipal Corporations* § 244, at 381–82 (1999) (because minutes are only evidence of municipality's official actions, authenticated minutes provide record for such actions).

¶ 64 As part of its motion for summary judgment, Wellsville provided the district court with a certified copy of the minutes from all relevant public meetings and, in particular, the meeting of October 9, 1996. The minutes reflect the substance of the entire discussion concerning the renewal of DPSI's business license as well as the names of all citizens who appeared and the substance of their testimony. The history of the odor problem was reviewed by Wellsville's counsel. Several citizens, as well as committee members, gave testimony concerning the type of smells and the timing of the smells. DPSI's counsel provided information concerning what DPSI thought caused the odors and options for remedies. Some citizens tes-

tified as to their concern for jobs should the facility be forced to close. After more than two hours, the council adjourned for deliberation. Following twenty-five minutes of deliberation, the council returned to the public meeting and announced its decision that "the DPSI business is a nuisance, and that it should be abated or controlled." In addition, the council ordered that DPSI's business license renewal application was denied effective October 31, 1996.

¶ 65 As previously stated, while the record consists of the minutes of the hearing and the formal findings and order, a complete record is not necessary for due process as long as the reviewing court is allowed to determine the facts of the proceedings. *See Xanthos,* 685 P.2d at 1034. The minutes in this case give a complete rendition of the proceedings and also meet the requirements of the Act. The minutes reflect the final decision and order of the Wellsville City Council. The court's memorandum decision shows that the district court was able to adequately ascertain the facts of the proceeding to ensure due process was provided. There is no requirement that the city council issue a separate finding of fact and order. Therefore, the district court did not err in holding that the record of the proceedings substantiated that due process requirements were met.

## V.   WHETHER GRANT OF INJUNCTION IS APPROPRIATE REMEDY

■ ¶ 66 DPSI has claimed that the district court abused its discretion by issuing injunctions without a review on the merits. Wellsville countered that there were two issues before the district court: (1) whether Wellsville's decision was within its authority and not arbitrary or capricious, and (2) whether an injunction was an appropriate remedy. We have shown that Wellsville's characterization was correct and that Wellsville's decision was within its authority and neither arbitrary nor capricious. We now address, therefore, whether the district court's grant of injunction was an appropriate remedy.

¶ 67 After Wellsville's city council denied renewal of DPSI's business license, DPSI continued operating its facility. Therefore, Wellsville filed a counterclaim requesting that the court enforce abatement of the odor nuisance by enjoining DPSI from operating without a business license. If a license has been properly revoked and a business nevertheless continues to operate, an action for injunction lies. *See Ogden City v. Eagle Books, Inc.*, 586 P.2d 436, 437 (Utah 1978).

¶ 68 Wellsville properly denied DPSI's business license renewal application because (1) Wellsville acted within its authority, (2) Wellsville's actions were neither arbitrary nor capricious, and (3) Wellsville afforded DPSI due process in the business license proceedings. Thus, because DPSI continues to operate without a business license, an injunction is an appropriate remedy and the district court did not abuse its discretion in so ruling.

## VI. TERMS OF THE INJUNCTION

¶ 69 DPSI claims that the two injunctions issued were defective because they were not specific in their terms. In particular, DPSI contends that the district court erred by enjoining DPSI from operating its facility

> in such a manner that odors emanating from said facility become or constitute a nuisance as defined in the Wellsville City Ordinances Sections 8.28.010, 8.28.020, 8.28.210, and as set forth in the Notice initially served upon [DPSI] and which formally initiated the proceedings in this matter dated September 25, 1996.

DPSI claims that the district court is precluded from including references to the Wellsville City Ordinances and the original notice. In addition, DPSI postulates that this injunction must clarify the definition of nuisance so that DPSI knows what it is specifically enjoined from doing. Further, DPSI argues that the injunction enjoining it from operating without a business license is in error unless the court lists the legitimate requirements of a business license.

¶ 70 Wellsville counters that when read with the memorandum decision, the injunc-

tions substantially comply with the rules regulating the form of injunctions. Alternatively, Wellsville argues that the matter can be remanded only so that the language complained of can be struck and replaced with the actual language of the referenced documents.

¶ 71 First, we have already discussed Wellsville's authority to regulate businesses through business licenses and ordinances. Since DPSI raises no other specific issues with the way Wellsville has written its business licensing ordinances, we hold that the injunction enjoining DPSI from operating without a business license is sufficient.

¶ 72 Next, the Rules of Civil Procedure provide that "[e]very ... order granting an injunction ... shall be specific in terms and shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." Utah R. Civ. P. 65A(d). Therefore, the references to the Wellsville City Ordinances and the original notice are in error. We remand to have those references replaced by the actual language of the documents.

¶ 73 Finally, with regard to DPSI's remaining complaint that the district court must define what constitutes a nuisance,

> a defendant who wants to operate a plant which has been declared to be a nuisance should offer evidence to the court as to how the plant could be used without creating a nuisance before he complains that the court did not tell him how he could use his plant.

*Draper v. J.B. & R.E. Walker, Inc.*, 121 Utah 567, 570–71, 244 P.2d 360, 362 (1952). The *Draper* court held that it would place an undue burden on a judge to expect the judge to determine how an offending defendant could correct a nuisance. *See* 121 Utah at 571, 244 P.2d at 362. That court found the injunction sufficient that enjoined a defendant from operating its gravel pit so as to create a nuisance from objectionable noise, dust, and flashing lights. *See* 121 Utah at 569–70, 244 P.2d at 361. Likewise, we hold that the injunction regarding nuisance in this case, once the specific language of the ordi-

nances violated is incorporated, is sufficiently definite to apprize DPSI of what it may or may not do with regard to producing odors.

## CONCLUSION

¶ 74 We hold that the district court did not err in granting summary judgment to Wellsville and in ordering injunctions against DPSI. However, we remand to the district court for the limited purpose of replacing the references to other documents in the injunction regarding nuisance with the applicable language from those documents.

¶ 75 Chief Justice HOWE, Justice DURHAM, Justice DURRANT, and Justice WILKINS concur in Justice RUSSON's opinion.