DAVIS, Judge
(dissenting):
I 47 I respectfully dissent from the majority opinion because I believe our reliance on the August 2009 and November 2009 proceedings (the Offer of Proof Proceedings) is limited by the narrow purpose for which the trial court permitted those proceedings to take place, which was not to put on new evidence and reargue whether State v. Baker, 56 Wash.2d 846, 855 P.2d 806 (1960), was
complied with, but to lay the groundwork for the State's argument that Baker is obsolete in light of advancements in Breathalyzer technology. I believe the majority's reliance on the Offer of Proof Proceedings for off-topic evidence of Baker compliance is fundamentally unfair and violates Relyea's due process rights.[1] See Dairy Prod. Servs., Inc. v. City of Wellsville, 2000 UT 81, 149, 13 P.3d 581 ("[Dlue process is not a technical conception with a fixed content unrelated to time, place, and circumstances. Instead, due process is flexible and, being based on the concept of fairness, should afford the procedural protections that the given situation demands." (citations and internal quotation marks omitted)).
{48 The parties and the trial court were confused as to what to call the Offer of Proof Proceedings and what rule authorized them. The State and trial court proceeded as though the purpose of the Offer of Proof Proceedings was limited and as though this was not a continuation, reopening, or reargument of the Baker compliance issue, but an entirely separate and distinct aspect of the case. The parties and the trial court proceeded accordingly, leading Relyea to expect that the State would not turn around and rely on the Offer of Proof Proceedings to challenge the trial court's Baker compliance ruling. The majority's opinion, however, permits just that.
T49 The State titled its request for an additional evidentiary hearing, "Motion For Leave To Supplement Record," and stated, "If the court permits the [State a short hearing in which to supplement the record, the [S]tate will not ask the court to reconsider its [Baker compliance] ruling...." (Emphasis added.) Relyea opposed the motion, arguing that the Utah Rules of Criminal Procedure do not allow the State's request because it amounted to a request for a "re-ruling" on the suppression issue. During the *292 August 2009 proceeding, the trial court seemingly agreed with Relyea that there was not a clear procedure that allowed the State's request and expressly declined to treat the State's motion as a motion to supplement. Instead, the trial court "granted the] motion" but "den[ied] the request to augment the record" and in turn permitted the State to "do an offer of proof by putting on the evidence so [it could] preserve [its challenge to Baker's obsolescencel." The trial court expressly prohibited the State from "augment{ing] the record" with facts relevant to the motion to suppress after it had already ruled to exclude the Intoxilyzer evidence. The State agreed with that determination, noting that the purpose of the Offer of Proof Proceedings was not to challenge "the district court's June 2009 ruling of inadmissability based on Baker rule noncompliance" but, "to challenge the utility of the Baker decision requiring an officer to observe a suspect for 15 minutes before administering an intoxilyzer test," and to "help the [clourt understand the technical advancement and capabilities of the Intoxilyzer 8000 as compared to the [BJreathalyzer that was used in 1958 in [Baker ]." Relyea also understood that this was the limited purpose of the Offer of Proof Proceedings, explaining, "The trial court scheduled a hearing on the State's motion after the State made it clear that it was not presenting evidence for the purpose of reconsidering the exclusion of [the Intoxilyzer] test results and would not be asking the court to do so...."
50 The State offered its evidence during the August 2009 proceeding. At the conclusion of the proceeding, the trial court "recognize{d that] this [was] the State's attempt to augment the record" but still asked Relyea's trial counsel if she "want[led] to present anything else," to which counsel responded in the negative.
§ 51 After the State put on its evidence in the August proceeding, the parties reconvened in November 2009, at which time the State explained that it needed "another ruling from [the court]" on Baker and proceed'ed to argue why Baker should be abandoned. Specifically, the State asked the trial court to "reconsider its prior [suppression] ruling," though the State's arguments in support of that request were confined to the Baker obsolescence issue and not the Baker compliance issue addressed in the original suppression ruling. The State suggested that the trial court "look at [its suppression ruling] again[,] taking into account all the supplemental evidence" that it proffered in August 2009. The State asserted that this was procedurally permissible because Relyea's initial motion to suppress should have actually been considered a motion in limine and the "trial court is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling," see Tschaggeny v. Milbank Ins. Co., 2007 UT 37, 11 16, 163 P.8d 615 (emphasis and internal quotation marks omitted). Relyea disagreed, arguing that "because the supplemental evidence was still regarding the Baker issue and the observation period," and "because the [clourt did not overlook any facts ... [or] misconstrue any of the facts," the State should not be permitted to augment the record. This time, however, the trial court seemed to agree with the State's characterization of Relyea's original motion to suppress as a motion in limine and "allow[ed] the State to augment the record," but maintained its original position that the In-toxilyzer evidence failed to comply with Baker. The trial court also acknowledged that "probably nobody saw this coming" and that "all of this should have been presented at the original [April 2009] hearing," and again offered Relyea the opportunity to present additional evidence on this matter. The trial court issued another Order in January 2010, in light of the Offer of Proof Proceedings, in which it stated that the Baker compliance issue and the Baker obsolescence issue were both before the court. The court listed facts in its findings that were presented in the August 2009 proceeding, including new evidence that addressed the Baker compliance issue. The trial court also stated in this order that the August 2009 proceeding was requested so that the State could "argue[ ] that compliance with the Baker rule was not necessary."
$52 In other words, neither the parties nor the trial court had a firm understanding of what was happening with these proceedings. However, despite this confusion, the *293 State maintained throughout the two proceedings that it was "trying to be transparent" about its goal, which was "to overturn Baker." Thus, the expectation the majority now imposes on Relyea-that he should have put on more evidence pertaining to the Baker compliance issue or challenged the State's offerings on Baker compliance grounds during the Offer of Proof Proceedings-is fundamentally unfair[2] Seq eg., supra 1° 40-42. A party should not be expected to argue about apples in a proceeding about oranges. The suppression hearing was not reopened, and we should not now impose on Relyea the expectation that he should have treated the Offer of Proof Proceedings as though they were actually continuations of the suppression hearing. See Pau v. Yosemite Park & Curry Co., 928 F.2d 880, 890 (Oth Cir.1991) {explaining that an offer of proof proceeding should be reviewed according to the contours the trial court established for that proceeding).
158 I agree with the majority that the trial court has considerable discretion to grant a party's motion to supplement the record and "allow the introduction of newly discovered evidence" as well as "evidence that could have been introduced during [al prior hearing." See supra 124. However, these were not proceedings to supplement the record of Baker compliance, nor were they billed by the State or trial court as proceedings to continue or to reopen the April 2009 suppression hearing in all of its aspects,. These were offer of proof proceedings, which are generally intended to permit a party to "create an appellate record of what the evidence would have shown," State v. Boyd, 2001 UT 30, ¶36, 25 P.3d 985, in
order to "preserve the record for appellate review," Loas Vegas Convention & Visitors Auth. v. Miller, 124 Nev. 669, 191 P.3d 1138, 1150-51 (2008). Evidence offered during such proceedings may or may not constitute evidence supporting a finding of fact. Here, the parties and the trial court were quite clear about the limited seope and purpose of the proceedings. Indeed, the manner in which the trial court asked Relyea at the close of the August 2009 proceeding if he would like to "present anything else," even though the proceeding was "the State's attempt to augment the record," indicated that the trial court did not expect Relyea to participate in that manner. See supra 150. This shared understanding assured Relyea that the Offer of Proof Proceedings would actually be limited in scope. Presumably these repeated assurances caused Relyea to focus his participation in the proceedings accordingly, i.e., to treat the proceedings as true offer of proof proceedings on Baker obsolescence, rather than proceedings to supplement the record of Baker compliance, and to focus on the propriety of the evidence proffered in light of the State's restricted purpose. Under the unique facts and circumstances of this case, I believe fundamental notions of due process require us to constrain our analysis to the same narrow purpose mutually understood by the parties and the trial court when they went forward with the Offer of Proof Proceedings. CF Pau, 928 F.2d at 890. To do otherwise, as the majority has done, is akin to permitting the State a second bite at the apple [3] and transforms the repeated assurances by the State and trial court that the proceedings were limited in purpose and *294 scope into a true "gotcha" seenario for Re-lyea on appeal, see generally Salcedo v. Asociacion Cubana, Inc., 368 So.2d 1337, 1339 (Fla.Dist.Ct.App.1979) ("[Clourts will not allow the practice of the ... 'gotcha" school of litigation to succeed.").
T54 The majority's indulgence of the State's Baker compliance argument is based on new evidence presented in the August 2009 Offer of Proof Proceedings that the Arresting Officer observed Relyea for sixteen minutes in the police station before administering the Intoxilyzer test (the observation evidence). Arguably, the trial court should not have permitted the State to present that, or any other evidence that was beyond the narrow seope of the proceedings, and Relyea should have objected to its admission. Nonetheless, the fact that the State was able to introduce evidence extrinsic to the purpose of the proceedings does not render the nature of the majority's reliance on that evidence proper.
1 55 Additionally, when the trial court stated that the observation evidence "would be a ground for reconsideration if [the court] misconstrued that fact," the State admitted that the observation evidence "wasn't presented." The trial court then explained that any new evidence offered in the Offer of Proof Proceedings "wo[uld not] change the [court's June 18 suppression] ruling unless [the State could] show that [the court] misconstrued" facts that were on the record "at the time the motion was submitted." When the trial court ruled on the suppression motion, the record reflected a twenty-one minute time period between the mouth check and the Intoxilyzer test, with no differentiation made as to how much of that time was spent in the patrol car and how much was spent in the police station. The trial court correctly determined that it could not reconsider its ruling based on the State's newly presented evidence and that even if it did reconsider its ruling, the observation evidence would not change its determination that Baker was not satisfied. The State appeared to agree with this holding, conceding that despite the observation evidence, the Arresting Officer still did not comply with the Baker requirements[4] If anything, this concession reinforces the other assurances Relyea received that Baker compliance was a settled issue and that the Offer of Proof Proceedings were intended to focus solely on preserving evidence as to whether Baker ought to be overturned. This distinction further justified Relyea's decision not to object to the admission of the observation evidence or present his own evidence during the Offer of Proof Proceedings.
1 56 Consequently, in light of the repeated assurances given to Relyea that the Offer of Proof Proceedings were limited in seope and purpose and would not subsequently be used to revisit the Baker compliance issue, and in recognition of the fact that an offer of proof may or may not constitute evidence that can support a finding of fact, I respectfully dissent from the majority opinion. I would determine that the trial court did not abuse its discretion by suppressing the Intoxilyzer test results, even in light of the observation evidence proffered during the Offer of Proof Proceedings, because of the nature of those proceedings and the due process concerns implicated by the State's and trial court's repeated assurances to Relyea throughout those proceedings. To disregard the import of the State's and trial court's repeated assurances to Relyea, and to then use evidence proffered in the Offer of Proof Proceedings to reverse the trial court's decision, is fundamentally unfair. The trial court correctly reaffirmed its ruling on Relyea's motion to suppress, and I would accordingly affirm that ruling.

. The majority argues that because Relyea did not raise any issues of due process, I should not be concerned with such issues. This, however, misconstrues my concern. The due process violation I identify is not something Relyea would have argued on appeal. Rather, it is a result of the majority's decision to reverse and remand, relying on the Offer of Proof Proceedings in a manner that transforms those proceedings into something more than they actually were. Indeed, I interpret Section IV of the majority opinion as underscoring my due process concerns, in that it demonstrates in even greater detail how confused and unclear the trial court and parties were throughout the Offer of Proof Proceedings.

. The majority characterizes the Offer of Proof Proceedings as a forum for the State to both reassert its Baker compliance argument and argue that whether Baker was satisfied is immaterial because Baker should be considered obsolete. See supra TM 21-22.

. I acknowledge that the situation here does not amount to res judicata. See generally Macris & Assocs., Inc. v. Neways, Inc., 2000 UT 93, 1 34, 16 P.3d 1214 (noting that "there are two branches of res judicata, claim preclusion and issue preclusion-also known as collateral estoppel"-and explaining that "claim preclusion applies to whole claims, whether litigated or not, and prevents parties from relitigating the same claim in a second suit," while "issue preclusion, or collateral estoppel, arises from a different cause of action and prevents parties or their privies from relitigating particular issues that have been contested and resolved" (internal quotation marks omitted)); Salt Lake City v. Silver Fork Pipeline Corp., 913 P.2d 731, 733 (Utah 1995) ("Claim preclusion prevents parties or their privies from relitigating a claim for relief that was once litigated on the merits and resulted in a final judgment between the same parties or their privies." (emphasis and internal quotation marks omitted)).

. The State appeared to concede that Baker was not complied with at least one other time during the proceedings. During the November 2009 proceeding, the State, in requesting that the trial court reconsider its ruling granting Relyea's motion to suppress, stated,
[¥Jou could go ahead and take a look at the evidence that we provided to the [clourt and find that the officer, based upon his expert testimony, even though he didn't comply with the 15 minute observation, that you could still go ahead and allow [the Intoxilyzer test results] because that evidence does not go to admissibility. We believe it goes to the weight.