2008 UT App 127

**14TH STREET GYM, INC., a Nevada corporation, Plaintiff and Appellant,**

v.

**SALT LAKE CITY CORPORATION, a municipal corporation, Defendant and Appellee.**

No. 20061113–CA.

Court of Appeals of Utah.

---

W. Andrew McCullough, Midvale, for Appellant.

Evelyn J. Furse and Edwin P. Rutan, Salt Lake City, for Appellee.

Before GREENWOOD, P.J., THORNE, Associate P.J., and ORME, J.

## OPINION

THORNE, Associate Presiding Judge:

¶1 14th Street Gym, Inc. (the Gym) appeals from the district court's summary judgment dismissing its complaint seeking review of Salt Lake City Corporation's (the City) revocation of the Gym's business license. We reverse the district court's order and remand this matter to the district court for further proceedings consistent with this opinion.

## BACKGROUND

¶2 The Gym is a City-licensed business that has been in operation since 1991. The Gym operates as a social club catering to gay males, and its facilities include workout rooms, two television lounges, a locker room, a hot tub, and a steam room. The Gym operates on a membership basis and requires both a waiting period and criminal background check for prospective members.

¶3 Over the years, the City has had concerns about illicit sexual activity occurring on Gym premises. In November 2000, the Gym entered into a stipulation with the City to hire additional employees to monitor the premises and guard against improper conduct. Between October 2003 and October 2004, City police officers entered the Gym undercover as paying members and observed various incidents of lewd conduct including masturbation and oral sex. These incidents were primarily observed in the Gym's steam room and resulted in at least two citations[1] for lewd activity.

¶4 In January 2005, a City hearing officer conducted a hearing (the 2005 Hearing) concerning the possible revocation of the Gym's business license due to lewd activity on the premises. The hearing officer made findings that lewd conduct occurred on Gym premises on five separate occasions between October

---

1. The citations were issued to the individual participants, not to the Gym.

2003 and October 2004; that the lewd conduct constituted violations of City code provisions and warranted suspension or revocation of the Gym's license; that an employee of the Gym "condoned, encouraged, or turned a blind eye towards the lewd conduct"; and that the Gym's ownership had "an opportunity and a duty to know about the lewd conduct occurring at [the] business." Pursuant to these findings, the hearing officer entered an order (the 2005 Order) suspending the Gym's business license outright for ninety days, and provisionally for another 270 days. The 2005 Order stated that "[i]f any problems arise in the nine (9) months following the first 90–day suspension period, the license will be revoked after a hearing is held and the hearing examiner determines that a violation has occurred." The Gym did not seek review of the 2005 Order.

¶ 5 In June 2005, while the Gym was operating during the provisional period, City police officers returned to the premises and observed two men engaged in oral sex in the steam room. The officers arrested the two men, who each later pleaded guilty or no contest to lewdness charges. Scott Williams, a City licensing detective, also inspected the premises in January 2006, but observed no sexual activity.

¶ 6 In March 2006, the City held another license revocation hearing (the 2006 Hearing) pertaining to the Gym. Testimony at the hearing included that of Williams; Kim Oliverson, the City detective who had made the June 2005 lewdness arrests; Edna Drake, a City business licensing officer; and A.J. Busch, the Gym's owner. Busch testified to steps he had taken since the 2005 Order to prevent recurrences of lewd conduct on the premises. Nevertheless, in light of the June 2005 arrests, the hearing officer entered an order (the 2006 Order) reiterating the 2005 Order's provisional operation language, determining that another violation had occurred on Gym premises, and stating that the "2005 Order has been abrogated and, therefore, there will be a revocation." The

2006 Order revoked the Gym's business license effective March 22, 2006, and allowed the Gym to reapply for a license after one year.

¶ 7 The Gym sought review of the 2006 Order in district court. Both parties moved for summary judgment, and the district court dismissed all of the Gym's claims, including its claim that the City's revocation of the Gym's business license in the 2006 Order was arbitrary and capricious. The Gym appeals.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 8 The Gym argues [2] that the City's revocation of its business license because of the conduct of two of its patrons, with no finding of knowledge or other culpability on the part of the Gym, was arbitrary and capricious. " 'Judicial review of license revocations by municipalities is limited to a determination whether the municipality acted within its lawful authority and in a manner that is not arbitrary or capricious.' " *Dairy Prod. Servs., Inc. v. City of Wellsville*, 2000 UT 81, ¶ 42, 13 P.3d 581 (quoting *Whiting v. Clayton*, 617 P.2d 362, 364 (Utah 1980)).

## ANALYSIS

■ ¶ 9 This case arises in the context of a long history of conflict between the Gym and the City over the degree of privacy and freedom of behavior permitted Gym patrons under City ordinances. Undisputedly, there have been multiple incidents of lewd conduct that have occurred on Gym premises over the years, resulting in both criminal charges against the individuals involved and administrative action against the Gym. However, the only issue before us is the propriety of the City's revocation of the Gym's business license based solely on the Gym's purported abrogation of the requirements set forth in the 2005 Order. On the record before us, we determine that the City's revocation of the Gym's business license was arbitrary and

---

**2.** The Gym raises several other arguments, including a challenge to the City's authority to revoke business licenses without judicial assistance and constitutional arguments asserting the privacy and associational rights of the Gym's

clientele. In light of our resolution of this matter on the grounds discussed in the body of this opinion, we do not address the Gym's other arguments.

capricious and reverse the district court's order ruling in the City's favor on that issue.

■■■ ¶ 10 A municipality's license revocation decision is deemed arbitrary or capricious "if it is 'not supported by substantial evidence in the record.'" *Save Our Canyons v. Board of Adjustment*, 2005 UT App 285, ¶ 12, 116 P.3d 978 (citation omitted). "'Substantial evidence' is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *First Nat'l Bank of Boston v. County Bd. of Equalization*, 799 P.2d 1163, 1165 (Utah 1990). In determining whether substantial evidence supports the City's decision, we will consider all the evidence in the record, both favorable and contrary, and determine whether a reasonable mind could reach the same conclusion as the City. *See Save Our Canyons*, 2005 UT App 285, ¶ 12, 116 P.3d 978; *Patterson v. Utah County Bd. of Adjustment*, 893 P.2d 602, 604 (Utah Ct.App. 1995).

¶ 11 In this case, pursuant to the terms of the 2005 Order, the Gym was operating provisionally between late April 2005 and late January 2006. The terms of the provisional license stated that "[i]f any problems arise" during the probationary period, "the license will be revoked after a hearing is held and the hearing examiner determines that a violation has occurred." It is undisputed that in June 2005, two individuals committed acts on Gym premises that the hearing officer determined to be violations of City ordinance. The hearing officer made no findings, however, that the Gym or its agents or employees participated in these acts, knew that they were occurring, or permitted them to occur.

¶ 12 Thus, the question before us is essentially one of interpretation of the 2005 Order. If the "violation" envisioned in the 2005 Order need only be any violation of City ordinance, by any person, committed on Gym premises, then there is clearly evidence in the record to support a finding of such a violation. However, if the violation must be attributable to the Gym through its agents or employees, then there are inadequate findings to support the hearing officer's conclusion that the 2005 Order had been violated because the hearing officer did not find culpable conduct on the part of the Gym or its employees.

¶ 13 We interpret the 2005 Order as requiring some culpability on the part of the Gym before the provisional license can be revoked. This interpretation is suggested by the language of City ordinance 5.02.250, which allows for revocation of a business license upon a finding of a violation or conviction of any of various enumerated offenses *"with respect to the licensee or licensee's operator or agent."* Salt Lake City, Utah, Code § 5.02.250(A) (emphasis added). Thus, the City's own code authorizes business license revocations only when a violation can be attributed in some way to the licensee. Section 5.02.250 does not speak to whether a *provisional* license may be conditioned on the conduct of persons outside a licensee's knowledge or control. However, even if a provisional licensing order may depart from the general rule requiring licensee culpability for revocation, the order should clearly indicate as much. The 2005 Order, which referred only to "problems" and "violation[s]," did not give fair notice to the Gym that it might otherwise be held to account for the surreptitious criminal actions of third parties.

¶ 14 Further, the actual violations found in the 2005 Order were not lewdness offenses committed by patrons, but offenses *by the Gym* for violations of City ordinance sections 11.16.070 and 11.16.080. *See* Salt Lake City, Utah, Code §§ 11.16.070 (prohibiting the maintaining of a public nuisance), 11.16.080 (prohibiting businesses from "allow[ing] or permit[ting]" nakedness, indecent attire, or lewd dress on the premises unless specifically licensed to do so). The 2005 Order expressly addressed the Gym's culpability with its findings that the Gym's "employee or agent ... condoned, encouraged, or turned a blind eye towards the lewd conduct" and that the "[o]wnership had an opportunity and a duty to know about the lewd conduct." Because the 2005 Order suspended the Gym's license on the basis of code violations by the Gym, it is reasonable to conclude that revocation of the Gym's provisional license would require the same type of violation—one committed by, or at least attributable to, the Gym or its agents or employees.

¶ 15 The 2006 Order revoked the Gym's license solely based on violations of City code by two persons who were not Gym employees or agents. While it is possible that these acts could also represent code violations by the Gym if the Gym knew of, should have known of, or condoned the acts, the 2006 Order made no such findings. Nor is there evidence in the record particularly supporting such a conclusion. Indeed, the hearing officer commented at the 2006 hearing:

> I'm not saying, not saying that Mr. Busch or anybody at the 14th Street Gym has precipitated the problem that we're talking about today with the arrest and the conviction of these two individuals who now are not members and were not employees, and there's no testimony that they were even volunteers....

In light of the record, and our conclusion that the 2005 Order allowed for revocation of the Gym's provisional license only upon further violation by the Gym, we determine that the City's revocation of the Gym's license for the actions of third persons, without any finding of culpability on the part of the Gym, was arbitrary and capricious. Accordingly, it must be reversed.

¶ 16 We recognize that the hearing officer interpreted his own prior 2005 Order as mandating the revocation of the Gym's license upon a finding of any violation occurring on Gym premises without regard to the Gym's culpability. We also recognize that there was some discussion at the 2005 Hearing that would suggest such an intent. Nevertheless, in light of the 2005 Order's overall emphasis on the Gym's knowledge or intentional ignorance of the problems leading up to that order, we determine that the 2005 Order's revocation provisions require some culpability on the part of the Gym despite the hearing officer's comments. *Cf. Evans v. State*, 963 P.2d 177, 180 (Utah 1998) ("Regardless of the language used during the hearing, the language in the court's final written order controls....").

¶ 17 We determine that the 2005 Order only allowed for revocation of the Gym's provisional license for culpable conduct by or attributable to the Gym. Accordingly, we hold that it was arbitrary and capricious for the City to revoke the license for abrogation of the 2005 Order based solely on the acts of third-persons, with no finding of knowledge or other culpable behavior on the part of the Gym.

### CONCLUSION

¶ 18 The sole articulated basis for the City's 2006 revocation of the Gym's business license was the Gym's alleged violation of the terms of its provisional license as set out in the 2005 Order. However, the 2005 Order indicated that revocation would occur only upon further violations by the Gym within the provisional licensing period. The 2006 Order found that such ordinance violations had occurred, but those violations were committed by Gym patrons, not by the Gym or its agents or employees. And, there is no indication in the record that the Gym or its agents or employees knew of or condoned the acts forming the basis of the 2006 Order. Accordingly, the City's 2006 revocation of the Gym's business license for violation of the terms of the 2005 Order was arbitrary and capricious and must be reversed. We therefore reverse the district court's judgment in favor of the City and remand this matter with instructions to enter judgment in favor of the Gym in conformity with the terms of this opinion.

¶ 19 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, GREGORY K. ORME, Judge.