*This opinion is subject to revision before final publication in the Pacific Reporter*

**2013 UT 36**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

ZIONS MANAGEMENT SERVICES,
*Appellee,*

*v.*

JEFFREY S. RECORD,
*Appellant.*

No. 20110860
Filed: June 25, 2013

Third District, Salt Lake City Dep't
The Honorable Todd M. Shaughnessy
No. 110914393

Attorneys:

Michael Patrick O'Brien, Mark D. Tolman, Brock N. Worthen,
Salt Lake City, for appellee

Jaqualin Friend Peterson, Elizabeth M. Peck,
April L. Hollingsworth, Salt Lake City, for appellant

CHIEF JUSTICE DURRANT authored the opinion of the Court,
in which ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, JUSTICE PARRISH, and JUSTICE LEE joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

## INTRODUCTION

¶1   Appellant Jeffrey S. Record seeks appellate review of the district court's order compelling him to arbitrate various claims that arose out of his employment with Appellee Zions Management Services Company (Zions). Mr. Record argues that the district court erred in compelling arbitration because the plain language of the arbitration clause in his employment contract allows him to pursue administrative remedies prior to submitting to arbitration. We agree. Accordingly, we vacate the district court's order compelling arbitration and remand for further proceedings.

**BACKGROUND**

¶2   Mr. Record began working for Zions in February 1996. Throughout the course of his employment with Zions, and specifically in June 2007, Mr. Record signed various documents whereby he acknowledged receipt of the Zions Employee Handbook, which stipulated that any disputes arising out of his employment with Zions had to be resolved through mandatory, binding arbitration (Arbitration Agreement). In relevant part, the Arbitration Agreement stated:

> Any legal controversy or claim arising out of your employment with [Zions], which is not otherwise governed by an arbitration provision, that cannot be satisfactorily resolved through negotiation or mediation, shall be resolved, upon election by you or [Zions], by binding arbitration pursuant to this arbitration provision and the code of procedures of the American Arbitration Association (AAA). . . . Under this binding arbitration policy, an employee still has a right to file a claim with the EEOC, OSHA, or any other appropriate federal or state regulatory agency regarding a workplace issue. However, where permitted by law, binding arbitration, rather than the court system, is the process used for pursuing relief beyond the agency.

The Arbitration Agreement further stipulated that "[b]ecause employment with [Zions] involves interstate commerce, this binding arbitration agreement is made pursuant to, and is governed by, the Federal Arbitration Act."

¶3   At some point during his employment, Mr. Record became acquainted with Emilie Tanner, a co-worker at Zions. According to Zions, Mr. Record and Ms. Tanner became romantically involved, and Zions claims that it received a number of complaints from other employees regarding the couple's behavior. Zions informed Mr. Record and Ms. Tanner of these complaints and encouraged them to maintain a professional demeanor while with each other at work. Unfortunately, neither Mr. Record nor Ms. Tanner heeded this counsel, as Zions terminated both of them on February 22, 2010, after another employee reported seeing them together, partially undressed, in the back of a dark, unused file room.

¶4 After his termination, Mr. Record filed a "Charge of Discrimination" with the Utah Anti-Discrimination and Labor Division of the Utah Labor Commission (UALD), wherein he alleged that Zions had discriminated against him on the basis of his age, religion, gender, and association with a disabled individual. Mr. Record also alleged that Zions had retaliated against and harassed him in violation of federal and state law. UALD issued its Determination and Order on March 29, 2011, dismissing Mr. Record's discrimination claims because the "facts in the record, viewed in their entirety, indicate there is no reasonable cause to believe that [Mr. Record] was subjected to the discriminatory practices alleged."

¶5 Pursuant to the "Appeal Rights of the Determination and Order," Mr. Record appealed UALD's decision to the Adjudication Division of the Utah Labor Commission (Labor Commission) on April 28, 2011. Zions responded by attempting to enforce the Arbitration Agreement in those proceedings by filing a motion to compel arbitration. The administrative law judge, however, determined that "[t]he Labor Commission lacks jurisdiction to enforce an Arbitration agreement between an employer and employee." But the judge also stated that "[i]f the respondent files a Court Order requiring the case to be arbitrated the Commission would follow the Court Order."

¶6 Accordingly, and pursuant to both the Utah and Federal Arbitration Acts,[1] on June 14, 2011, Zions filed a "Motion to Compel Arbitration and Stay Judicial Proceedings" with the district court. Specifically, Zions' motion sought an order compelling Mr. Record to arbitrate his discrimination claims and an order staying the Labor Commission's review of UALD's decision. The district court granted Zions' motion and ordered Mr. Record to submit to arbitration. The district court also ordered the Labor Commission "to proceed no further in resolving [Mr. Record's] claims."

¶7 Pursuant to the district court's order, Zions attempted to dismiss Mr. Record's administrative proceeding by filing an "Order of Dismissal" before the Labor Commission on August 22,

---

[1] 9 U.S.C. § 4 (permitting a party who seeks to enforce an arbitration agreement to file a motion to compel arbitration with any United States district court); UTAH CODE § 78B-11-106 (permitting a party who seeks to enforce an arbitration agreement to file a motion to compel arbitration with any state district court).

2011. Despite its prior statement, however, the Labor Commission denied Zions' motion and instead insisted that "[t]he District Court does not have jurisdiction to stay the Commission's proceedings for an employment discrimination claim" and refused to stay the proceeding. In light of this order, Mr. Record likewise refused to comply with the district court's order and instead pressed on with his appeal before the Labor Commission.

¶8    After failing to secure either Mr. Record's or the Labor Commission's compliance with the district court's order, Zions returned to the district court and filed a "Motion for Contempt Order" on September 12, 2011. In its motion, Zions requested that the district court hold Mr. Record in contempt for his willful violation of the district court's order compelling arbitration. A few days later, Mr. Record filed his Notice of Appeal from the district court's Order Compelling Arbitration.

¶9    Despite Mr. Record's Notice of Appeal, the district court granted Zions' contempt motion on September 30, 2011. The district court's order recognized, however, that Mr. Record's "conduct in refusing to comply with the [district] court's order is based upon the [Labor Commission's] Order and therefore may be legally privileged." Nevertheless, the district court ordered Mr. Record to "take all steps reasonably necessary to stay . . . the proceedings before the [Labor Commission]."

¶10   Then, on October 6, 2011, the Utah Labor Commissioner modified the administrative law judge's decision to deny Zions' Order of Dismissal, holding that "until such time as the Order [Compelling Arbitration] is withdrawn, overturned, or superseded, the Labor Commission will comply with its terms." The Commissioner then stayed the proceedings related to Mr. Record's claims. Mr. Record amended his notice of appeal on October 31, 2011, to include the district court's contempt order and now asks us to review both the Order Compelling Arbitration and the Contempt Order. We have jurisdiction pursuant to section 78A-3-102(3)(j) of the Utah Code.

**STANDARD OF REVIEW**

¶11   "This court is the exclusive judge of its own jurisdiction. The question of whether an order is final and appealable is a

question of law."[2] This case also concerns the district court's interpretation of the parties' contract, which is a question of law that we review for correctness.[3]

## ANALYSIS

¶12 Before we can consider the merits of the parties' arguments, we must first resolve the procedural question of whether we have jurisdiction to hear this appeal. Specifically, we must address the question of whether the district court's Order Compelling Arbitration was a "final order" from which Mr. Record could properly appeal.[4] For the reasons stated below, we conclude that the order was a final order and that we may therefore address the parties' arguments.

¶13 Mr. Record argues that the district court erred in compelling arbitration because the plain language of the Arbitration Agreement does not mandate arbitration until Mr. Record seeks relief "beyond an agency." We agree with Mr. Record because the contractual language is unambiguous and does not foreclose the possibility of an employee seeking administrative review of an administrative decision prior to submitting to arbitration.[5]

---

[2] *Powell v. Cannon*, 2008 UT 19, ¶ 9, 179 P.3d 799 (footnote omitted) (internal quotation marks omitted).

[3] *Miller v. USAA Cas. Ins. Co.*, 2002 UT 6, ¶ 19, 44 P.3d 663.

[4] *See* UTAH R. APP. P. 3(a).

[5] Mr. Record also argues that the district court erred when it issued the Contempt Order because the order required him to "take all steps reasonably necessary to stay the parties' arbitration proceeding pending further order of this court or the Appeals Court." According to Mr. Record, this requirement somehow "impacts the ability of [various third parties] to move forward with the arbitration of their disputes" and was thus erroneous. Mr. Record did not raise this issue in the proceedings before the district court, however, and hence may not raise it for the first time on appeal unless he alleges plain error or exceptional circumstances. *State v. Moa*, 2012 UT 28, ¶ 24, 282 P.3d 985. He has alleged neither. Instead, he attempts to raise this issue as a challenge to the district court's subject matter jurisdiction, presumably in an attempt to avoid problems with preservation. But because this issue does not implicate the district court's

## I. UNDER UTAH LAW, THE DISTRICT COURT'S ORDER WAS A "FINAL ORDER" BECAUSE IT ENDED THE CONTROVERSY BETWEEN THE LITIGANTS

¶14 We first turn to the issue of whether the district court's Order Compelling Arbitration was an appealable "final order." Zions argues that the Arbitration Agreement is governed by the FAA, which allows an immediate appeal only if the district court's order is "a final decision with respect to an arbitration that is subject to [the FAA]."[6] Relying on this language, Zions urges us to immediately dismiss this appeal for lack of jurisdiction because the district court's order does not qualify as a "final decision." Specifically, Zions asserts that the order was not final because it "stayed rather than dismissed the case," and thus did not end the controversy between the parties. Mr. Record, in contrast, argues that the order was final and that therefore we may properly hear this appeal.

¶15 We agree with Zions that the Arbitration Agreement is subject to the FAA, which means that Mr. Record is entitled to appeal only if the district court's order was "final." We disagree, however, with Zions' assertion that federal procedural law governs our analysis of the order's finality. Instead, we will address the finality issue by referring to our own rules and principles of law, under which we agree with Mr. Record; the district court's arbitration order constitutes a "final decision," and therefore we have jurisdiction to consider the merits of Mr. Record's appeal.

*A. The Arbitration Agreement Clearly States that It Is Governed by the FAA, But State Rather Than Federal Procedural Law Applies When Determining What Constitutes a "Final Order"*

¶16 Mr. Record admits that he signed several documents acknowledging receipt of Zions' "Employee Handbook," and the Arbitration Agreement contained within the Handbook expressly states that it is governed by the FAA: "Because employment with [Zions] involves interstate commerce, this binding arbitration agreement is made pursuant to, *and is governed by*, the Federal Arbitration Act." (Emphasis added.) And under Section 16(a)(3) of

---

subject matter jurisdiction and because it was not preserved below, we decline to address it.

[6] 9 U.S.C. § 16(a)(3).

the FAA, appeals may only be taken from "a final decision with respect to an arbitration that is subject to this title."[7] Thus, we agree with Zions' argument that Mr. Record's appeal was proper only if the district court's order constitutes a "final order."

¶17 We disagree, however, with Zions' assertion that federal rather than state law applies to the procedural question of whether the order was "final." The United States Supreme Court has recognized the "general and unassailable proposition . . . that [s]tates may establish the rules of procedure governing litigation in their own courts."[8] But in the same opinion the Court cautioned that "where state courts entertain a federally created cause of action, the 'federal right cannot be defeated by the forms of local practice.'"[9] In other words, if state procedure poses "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," then federal procedural law would preempt state law.[10] Thus, the question for us becomes whether the application of our own procedural rules would pose "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" when it enacted the FAA.

¶18 Fortunately, the Supreme Court has already provided us with some guidance in this area. With respect to Congress's purpose in enacting the FAA, the Court has observed that the FAA "was designed to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate"[11] and to "ensure the enforceability, according to their terms, of private agreements to arbitrate."[12] And with respect to the application of state procedure, the Court has stated that the "FAA contains no express pre-emptive provision, [and] does [not] reflect a congressional intent to occupy the entire field of arbitration."[13] Furthermore, "[t]here is no federal policy favoring arbitration under *a certain set*

---

[7] *Id.*

[8] *Felder v. Casey*, 487 U.S. 131, 138 (1988).

[9] *Id.* (quoting *Brown v. Western Ry. of Ala.*, 338 U.S. 294, 296 (1949)).

[10] *Id.* (internal quotation marks omitted).

[11] *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) (internal quotation marks omitted).

[12] *Id.* at 476.

[13] *Id.* at 477.

*of procedural rules.*[14] Accordingly, most state courts that have considered this question have determined that there is no reason why federal procedural law should preempt state law in litigation governed by the FAA.[15]

¶19 We agree with this reasoning. Whether an order is "final" for the purposes of appeal is a purely procedural question, and given that (a) Congress has not expressly preempted the application of local procedural rules in the FAA and (b) the application of local procedural rules will not frustrate the purposes of the FAA, we conclude that even in litigation governed by the FAA, state procedural rules and applicable principles of law will apply. Accordingly, we address the issue of the finality of the district court's order under Utah law.

*B. Under Utah Law, the District Court's Order Constitutes a "Final Order" Because No Claims Were Left Pending Before the District Court*

¶20 Zions' principal argument against the finality of the district court's order is that the order included a stay of Mr. Record's administrative appeal that was pending before the Labor Commission, rather than a dismissal. Had the district court

---

[14] *Id.* at 476 (emphasis added).

[15] *See, e.g., S. Cal. Edison Co. v. Peabody W. Coal Co.*, 977 P.2d 769, 773 (Ariz. 1999) (en banc) ("The FAA does not . . . require submission to federal procedural law."); *Am. Gen. Fin. Servs. v. Jape*, 732 S.E.2d 746, 748–50 (Ga. 2012) (same); *Collins v. Prudential Ins. Co. of Am.*, 752 So. 2d 825, 828–29 (La. 2000) (same); *Wells v. Chevy Chase Bank, F.S.B.*, 768 A.2d 620, 627–29 (Md. 2001) (citing cases and stating that most state courts addressing this question have determined that their state procedural rules govern unless those rules undermine the purposes of the FAA); *St. Fleur v. WPI Cable Sys./Mutron*, 879 N.E.2d 27, 32–33 (Mass. 2008) (deciding that the FAA does not preempt state procedural rules); *Kremer v. Rural Cmty. Ins. Co.*, 788 N.W.2d 538, 546–47 (Neb. 2010) (same); *Superpumper, Inc. v. Nerland Oil, Inc.*, 582 N.W.2d 647, 651 (N.D. 1998) (same); *Moscatiello v. Hilliard*, 939 A.2d 325, 329 (Pa. 2007) ("The FAA does not preempt the procedural rules governing arbitration in state courts, as that is beyond its reach."); *Toler's Cove Homeowners Ass'n, Inc. v. Trident Constr. Co.*, 586 S.E.2d 581, 584 (S.C. 2003) (same); *In re Palacios*, 221 S.W.3d 564, 565 (Tex. 2006) (per curiam) (same).

dismissed the discrimination claims that were pending on appeal before the Labor Commission and then ordered arbitration, Zions argues, the order would have been "final" and this appeal would be proper. Zions also contends that the order lacked finality because the district court retains jurisdiction to confirm, vacate, modify, or correct the arbitration award once arbitration is completed. We are not persuaded by either of these arguments because (1) the district court did not have the authority to issue the stay of the administrative proceedings, which means that the order compelling arbitration completely resolved the controversy between the parties, making it a "final" order from which Mr. Record could appeal; and (2) the availability of post-arbitration remedies before the district court does not affect the finality of an order compelling arbitration.

1.  Because the District Court's Order Staying the Administrative Proceedings Was Void, There Was Nothing Left Pending Before the District Court, and Therefore Its Order Compelling Arbitration Was Final

¶21  In its argument against the finality of the district court's order, Zions relies primarily upon our decision in *Powell v. Cannon*.[16] In that case, the plaintiff parents sued a delivery doctor, a women's center, and a hospital for negligence.[17] The defendants moved to stay litigation and compel arbitration pursuant to the arbitration agreement that the plaintiffs had signed during their first visit with the delivery doctor.[18] The district court determined that the arbitration agreement was valid, not unconscionable, and that the plaintiffs could sign on behalf of the unborn child.[19] Accordingly, it granted the motion to stay litigation and compelled the plaintiffs to arbitrate their claims.[20]

¶22 The plaintiffs appealed.[21] On appeal, the defendants argued that we lacked jurisdiction because the order staying litigation and compelling arbitration did not constitute a "final

---

[16] 2008 UT 19, 179 P.3d 799.

[17] *Id.* ¶ 2.

[18] *Id.* ¶ 3.

[19] *Id.* ¶ 6.

[20] *Id.*

[21] *Id.* ¶ 7.

order."[22] We agreed, reasoning that "[a] district court's order is a final judgment only if it ends the controversy between the parties by finally disposing of the litigation on the merits as to all claims and all parties."[23] In other words, "[i]f *any* issue remains pending, the final judgment rule is not satisfied."[24] We then concluded that because the district court's order stayed litigation of the underlying negligence claims pending completion of the arbitration, the order was not final: "Until the district court enters judgment on the arbitration award, the Powells' underlying claims for medical malpractice remain viable and cognizable. . . . Therefore, we hold that an order staying litigation and compelling arbitration is not a final order from which an appeal may be taken."[25]

¶23 Zions argues that *Powell* is directly applicable here because the district court's order included both a stay and an order compelling arbitration. This argument presupposes, however, that the district court's order staying the administrative proceedings in the case before us was valid. But this presupposition is true only if the district court had subject matter jurisdiction over the proceedings below.[26]

¶24 As a general rule, Utah courts have "subject matter jurisdiction over a legal claim *unless adjudicative authority for that claim is specifically delegated to an administrative agency*."[27] This case concerns a discrimination claim over which the Labor Commission possesses exclusive jurisdiction: "The procedures contained in this section are the *exclusive remedy* under state law for employment discrimination based upon: (a) race; (b) color; (c) sex; (d) retaliation; (e) pregnancy, childbirth, or pregnancy-

---

[22] *Id.*

[23] *Id.* ¶ 15.

[24] *Id.* (emphasis added).

[25] *Id.* ¶¶ 18, 20.

[26] *J.M.W., III v. T.I.Z. (In re Adoption of Baby E.Z.)*, 2011 UT 38, ¶ 37, 266 P.3d 702, (stating that "[a] decision rendered by a court without subject matter jurisdiction is legally void at its inception"), *cert. denied*, 132 S. Ct. 1743 (2012).

[27] *Mack v. Utah State Dep't of Commerce*, 2009 UT 47, ¶ 33, 221 P.3d 194 (emphasis added).

related conditions; (f) age; (g) religion; (h) national origin; or (i) disability."[28] Therefore, because the Utah Code grants "exclusive" jurisdiction over discrimination claims to the Labor Commission,[29] a district court's role in the adjudication of such claims is governed by the Utah Administrative Procedures Act (UAPA),[30] which authorizes judicial review of agency action only *after* the parties have exhausted administrative remedies.[31] In interpreting this provision of UAPA, we have explicitly stated that state courts lack "subject matter jurisdiction to hear the case" if the litigant fails to exhaust all the administrative remedies available to him,[32] which is precisely what happened in this case.

¶25 Mr. Record initiated administrative proceedings when he filed a claim with UALD alleging discrimination. Accordingly, under UAPA the district court has no jurisdiction over those proceedings until Mr. Record has exhausted his administrative remedies, at which point Mr. Record can seek judicial review of the agency's decision.[33] Thus, when it was presented with the district court's order that purported to stay Mr. Record's administrative appeal, the Labor Commission correctly reasoned that "[t]he District Court does not have jurisdiction to stay the Commission's proceedings for an employment discrimination claim." This is correct because the district court's jurisdiction over those proceedings arises only *after* all administrative remedies have been exhausted. But because Mr. Record was just beginning to avail himself of those remedies at the time the district court attempted to issue the stay, the district court acted without jurisdiction, rendering its order void.

---

[28] UTAH CODE § 34A-5-107(15) (emphasis added).

[29] *See id.* §§ 34A-5-104(1), 107(1).

[30] *See id.* § 63G-4-102(1) (stating that UAPA applies to "every agency of the state" and "judicial review" of agency action).

[31] *Id.* § 63G-4-401(2).

[32] *Frito-Lay v. Utah Labor Comm'n*, 2009 UT 71, ¶ 30, 222 P.3d 55 ("The exhaustion of administrative remedies requirement mandates that the litigant follow all of the outlined administrative review procedures prior to a state court having subject matter jurisdiction to hear the case.").

[33] *See* UTAH CODE § 63G-4-401 to -405.

¶26 Accordingly, for the purposes of determining whether we have jurisdiction over this appeal, we will ignore the district court's attempt to stay the administrative proceedings. Once the stay is removed from the district court's order, the only issue before the district court was whether the Arbitration Agreement should be enforced. And once the district court issued its Order Compelling Arbitration, there was nothing left for the district court to do. Thus, under the reasoning of *Powell*, the district court's order was a "final decision" because it effectively ended the controversy between the parties and left no claims pending before the district court. We therefore have jurisdiction to hear this appeal.

2. The Availability of Post-Arbitration Remedies Before the District Court Does Not Affect the Finality of an Order Compelling Arbitration

¶27 Zions also argues that the district court's order was not final because "the district court . . . retains jurisdiction, under both the FAA and [Utah Arbitration Act], to enter post-arbitration judgment and to otherwise confirm, vacate, modify or correct the arbitration award." We disagree.

¶28 Although we stated in *Powell* that "the [district] court may modify or correct an arbitration award before entering a judgment on it,"[34] the fact remains that in *Powell* the district court had *stayed* litigation on the underlying claims for negligence and medical malpractice. Thus, while arbitration was proceeding, those claims remained live before the district court, and thus the district court did, in fact, "retain jurisdiction" over those claims, which is why we determined that the district court's order compelling arbitration and staying litigation was not final.

¶29 But here there were no live claims that remained before the district court after it issued its order. As demonstrated above, the district court's attempt to stay the administrative proceedings was void for lack of jurisdiction, and even though the district court may, pursuant to either the FAA or the Utah Arbitration Act, "confirm, vacate, or modify" an arbitration award, this fact does not affect the finality of an order compelling arbitration where no claims remain before the district court after it issues the

---

[34] 2008 UT 19, ¶ 18.

order.[35] Therefore, we conclude that the district court's order was final and that we have jurisdiction to hear the merits of this appeal.

## II. THE DISTRICT COURT ERRED IN ITS INTERPRETATION OF THE PARTIES' ARBITRATION AGREEMENT, WHICH UNAMBIGUOUSLY ALLOWS FOR ADMINISTRATIVE APPEALS

¶30  Mr. Record argues that the district court also erred when it determined that he was required to submit his discrimination claims to arbitration pursuant to the Arbitration Agreement. He points to the language of the Arbitration Agreement, which states that "binding arbitration, rather than the court system, is the process used for pursuing relief *beyond the agency*." (Emphasis added.) He then argues that this language is unambiguous, and that by pursuing an appeal within the Labor Commission, he has not sought relief "beyond the agency" and hence is not required to arbitrate. Zions, on the other hand, argues that this language is subject to multiple interpretations and urges us, pursuant to both state and federal policies favoring arbitration, to affirm the district court's order. Because this language is unambiguous, we agree with Mr. Record.

¶31 The Supreme Court has held that under the FAA "[a]rbitration is strictly a matter of consent, and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration."[36] In other words,

---

[35] We note that the United States Supreme Court has reached the same decision. In *Green Tree Financial Corp.-Alabama v. Randolph*, the Court reasoned that because the district court had dismissed the underlying claims with prejudice, the district court had "nothing more . . . to do but execute the judgment." 531 U.S. 79, 86 (2000). The Court then concluded: "where, as here, the District Court has ordered the parties to proceed to arbitration, and dismissed all the claims before it, that decision is 'final' within the meaning of § 16(a)(3), and therefore appealable." *Id.* at 89. In reaching this conclusion, the Court also noted that the fact that the FAA allows the parties to "bring a separate proceeding in a district court to enter judgment on an arbitration award once it is made (or to vacate or modify it) . . . *does not vitiate the finality of the District Court's [decision].*" *Id.* at 86 (emphasis added).

[36] *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2857 (2010) (citations and internal quotation marks omitted).

"arbitration is a matter of contract,"[37] the interpretation of which is "ordinarily a question of state law, which this Court does not sit to review."[38] Nevertheless, the Court has cautioned that when "applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [FAA], due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration."[39]

¶32 It is well established in Utah that "[i]f the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language."[40] Zions has failed to show, however, that the language in the Arbitration Agreement is ambiguous. Instead, Zions focuses almost exclusively on the parties' intentions in entering the Arbitration Agreement, arguing that failure to enforce it would cause "substantial delay, expense, duplication of effort, and risk of inconsistent results" as well as "unnecessary procedural difficulties." While this may be true, we "will not rewrite an unambiguous contract,"[41] nor will we "allow the parties to change or rewrite their original agreement."[42]

¶33 Zions admits that the Arbitration Agreement expressly allows for an employee to initiate administrative proceedings by "filing a claim" before a state or federal agency. Zions also acknowledges, of course, that the Arbitration Agreement contains the language "where permitted by law, binding arbitration, rather than the court system, is the process used for pursuing relief *beyond the agency.*" (Emphasis added.) Because Zions has not

---

[37] *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation marks omitted).

[38] *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989).

[39] *Id.* at 475–76 (citation omitted).

[40] *Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 12, 40 P.3d 599.

[41] *Provo City Corp. v. Nielson Scott Co.*, 603 P.2d 803, 806 (Utah 1979).

[42] *Ivory Homes, Ltd. v. Utah State Tax Comm'n*, 2011 UT 54, ¶ 12, 266 P.3d 751.

shown how this language is ambiguous, whatever the parties' intentions were prior to entering into this Arbitration Agreement is irrelevant because "the parties' intentions are determined from the plain meaning of the contractual language."[43]

¶34 Here, the language clearly states that arbitration is required only if Mr. Record attempts to obtain relief from sources "beyond the agency." But Mr. Record has not yet done so. He filed a discrimination claim with the Labor Commission, and then attempted to appeal UALD's decision on that claim to the Labor Commission. Neither action constitutes an attempt to seek relief "beyond the agency," and therefore the district court erred when it issued its order compelling arbitration because, under the plain language of the Arbitration Agreement, Mr. Record is not required to arbitrate his discrimination claims until he seeks relief "beyond the agency."

¶35 Zions attempts to avoid this result by arguing that *Preston v. Ferrer*[44] requires the parties to submit to arbitration once the agency "shifts from its role as investigator to impartial arbiter." Zions has misapplied this case, however, since the language of the arbitration agreement at issue in *Preston*, unlike the agreement here, did not expressly allow for administrative remedies. Instead, the agreement in *Preston* simply stated that "any dispute . . . relating to the terms of [the contract] or the breach, validity, or legality thereof" should be arbitrated "in accordance with the rules [of the American Arbitration Association]."[45] There was no language about administrative remedies, nor any language that conditioned arbitration on the petitioner's decision to seek "relief beyond the agency." Therefore, the reasoning in *Preston* is inapplicable.

¶36 At oral argument, Zions also attempted to rely on both state and federal policies that urge us to resolve "ambiguities as to the scope of the arbitration clause itself . . . in favor of

---

[43] *Cent. Fla. Invs., Inc.*, 2002 UT 3, ¶ 12.

[44] 552 U.S. 346 (2008).

[45] *Id.* at 350 (alterations in original) (internal quotation marks omitted).

arbitration."[46] As noted above, however, Zions failed to demonstrate how the language at issue here was ambiguous. Furthermore, we wish to reaffirm the position we took in *Bybee v. Abdulla*, wherein we stated that "[w]hile there is a presumption in favor of arbitration, that presumption applies only when arbitration is a bargained-for remedy of the parties as evidenced by *direct and specific evidence of a contract to arbitrate*."[47] We further note that state and federal policies favoring arbitration cannot be used to defeat the plain language of the parties' contract, nor can they be used to create ambiguities where there are none. Because the language of this contract is unambiguous, we reverse the district court's decision to compel arbitration and remand this case to the district court for further proceedings consistent with this opinion.

## CONCLUSION

¶37 Under the parties' Arbitration Agreement, Mr. Record was not required to submit his discrimination claims to arbitration until he sought relief based on those claims "beyond the agency." Because he has not yet pursued relief beyond the Labor Commission, the district court erred when it issued its order compelling arbitration. We therefore vacate that order and remand this case to the district court for further proceedings consistent with this opinion.

---

[46] *Volt*, 489 U.S. at 476; *see also Bybee v. Abdulla*, 2008 UT 35, ¶ 27, 189 P.3d 40 (stating that we have "no quarrel" with the presumption that ambiguities be resolved in favor of arbitration).

[47] 2008 UT 35, ¶ 27 (emphasis added) (internal quotation marks omitted).