2015 UT App 158

## THE UTAH COURT OF APPEALS

MIKE'S SMOKE, CIGAR & GIFTS,
Petitioner and Appellee,
*v.*
ST. GEORGE CITY,
Respondent and Appellant.

Memorandum Decision
No. 20140521-CA
Filed June 18, 2015

Fifth District Court, St. George Department
The Honorable Jeffrey C. Wilcox
No. 130500429

Bryan J. Pattison, Thomas J. Burns, Shawn M.
Guzman, and Paula J. Houston, Attorneys
for Appellant

Ryan L. Holdaway and Diane Pitcher, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Memorandum Decision, in
which JUDGES STEPHEN L. ROTH and JOHN A. PEARCE concurred.

TOOMEY, Judge:

¶1     St. George City appeals from a district court order reversing the City's revocation of the business license of Mike's Smoke, Cigar & Gifts (MSCG). The City argues the district court employed the incorrect standard in reviewing the City's revocation decision. We agree and therefore vacate the order and remand for further proceedings.

¶2     MSCG is a store licensed by the City to sell cigarettes and other tobacco-related products. Between March 2012 and January 2013, the Washington County Drug Task Force investigated MSCG for the suspected distribution of a controlled substance. Investigators purchased a product called "Reborn" at

MSCG; they later seized MSCG's inventory of Reborn. A forensic scientist at the Utah Bureau of Forensic Sciences (the State Crime Lab) tested samples of Reborn, and determined that it contained a substance known as XLR11, a structural analog of another substance called AM-694. Because AM-694 is classified as a controlled substance under Utah law and MSCG sold a structural analog of it, the City revoked MSCG's business license. MSCG appealed to the City Council.

¶3 During a hearing before the City Council, attorneys for the City and MSCG argued their respective positions and proffered evidence. The City presented the State Crime Lab's reports in which the forensic scientist attested that the samples of Reborn contained XLR11, which has a substantially similar chemical structure to the controlled substance AM-694. Taking the opposite view, MSCG presented the City Council with two opinion letters. In the first letter, a chemist opined that XLR11 is "substantially structurally different" from AM-694 and therefore is not "a structural analog of AM-694." In the second letter, a chemistry consultant opined that XLR11 and AM-694 are structurally dissimilar and have different pharmacological effects.

¶4 Based on the evidence before it, the City Council determined that the product sold by MSCG contained XLR11. It then relied on the State Crime Lab's reports to conclude that XLR11 is an analog of AM-694 and concluded that MSCG sold and possessed the product with intent to distribute it in violation of the Utah Controlled Substances Act. As a result, the City Council upheld the City's business-license-revocation decision.

¶5 MSCG petitioned the district court for judicial review of the City's decision.[1] In its petition, MSCG claimed, first, that the City's revocation decision was not supported by substantial

---

1. Pursuant to a stipulation, the City stayed the revocation of MSCG's business license while the matter is pending.

evidence and, second, that the definition of a controlled substance analog under the Utah Controlled Substances Analog Statute (the Analog Statute) was unconstitutionally vague. *See* Utah Code Ann. § 58-37-2(g) (LexisNexis 2012). In contrast, the City contended the City Council correctly interpreted the Analog Statute and MSCG's constitutional challenge lacked merit. Further, the City asserted that substantial evidence in the administrative record supported the City Council's revocation decision.

¶6      After reading the briefing and listening to oral argument on the matter, the district court issued its Final Order on Petition for Judicial Review. In the order, the court acknowledged that its task was "to determine whether the City Council's decision is supported by substantial evidence in the record." (Citing *14th St. Gym, Inc. v. Salt Lake City Corp.*, 2008 UT App 127, ¶ 10, 183 P.3d 262.) The court then found that "there is a disputed issue of fact as to whether the substance 'Reborn' has a substantially similar chemical structure to a controlled substance analog because such a finding cannot be made on written opinions by two qualified experts." Consequently, the court "reverse[d] and remand[ed] the matter back to the City Council to hold an evidentiary hearing where the experts can testify under oath and may be subject to cross examination by counsel."[2] Based on this ruling, the court did not reach the underlying merits regarding the constitutionality of the Analog Statute. The court's order concluded, "This is the final Order of the Court until after the

---

2. The district court judge explained this ruling at the hearing, stating,

> [M]y thinking is I need to reverse and remand sometimes as appellate courts do. I want to reverse and remand and tell you to have an evidentiary hearing where the experts are put under oath, they're subject to examination and cross-examination, and then the city council can make a determination based on an evidentiary hearing.

City [Council] holds an evidentiary hearing as set forth . . . above." The City appeals.

## I. The District Court's Order Is a Final Appealable Order.

¶7     As an initial matter, MSCG contends that we lack jurisdiction, arguing the district court's order is not a final appealable order. In particular, MSCG asserts that because the district court did not rule on the merits of its constitutional argument by addressing the meaning and interpretation of the Analog Statute, the issue remained before the court for its adjudication. MSCG further argues that the language of the order stating that it "is the final Order of the Court until after the City [Council] holds an evidentiary hearing" indicates that the district court was not treating the order as final.

¶8     "[W]hether an order is final and appealable . . . is a question of law." *Miller v. USAA Cas. Ins. Co.*, 2002 UT 6, ¶ 18, 44 P.3d 663. A judgment is final if it "dispose[s] of the case as to all the parties, and finally dispose[s] of the subject-matter of the litigation on the merits of the case." *Bradbury v. Valencia*, 2000 UT 50, ¶ 9, 5 P.3d 649 (emphasis, citation, and internal quotation marks omitted). Put differently, a final judgment "ends the controversy between the parties." *Id.* (citation and internal quotation marks omitted).

¶9     To support its position that the district court's order was not final, MSCG cites *Loffredo v. Holt*, 2001 UT 97, 37 P.3d 1070. In *Loffredo*, our supreme court dismissed an appeal, concluding that it lacked jurisdiction because the district court's order was not final. *Id.* ¶ 17. The supreme court reasoned, although the district court had ruled upon "the majority of the claims," it had not ruled on the issue of attorney fees. *Id.* ¶ 14. The supreme court held that for an order to be final, "it requires all claims . . . be decided in order for a decision to be appropriately appealed." *Id.*

¶10     By contrast, in *Zions Management Services v. Record*, our supreme court concluded that a district court's order was final for the purposes of appeal because "there was nothing left for

the district court to do." 2013 UT 36, ¶ 26, 305 P.3d 1062. Even though the controversy persisted in another forum, the order "effectively ended the controversy between the parties" because it left "no claims pending before the district court." *Id.* Moreover, the supreme court further clarified that the district court's jurisdiction to enter post-arbitration judgment did not otherwise affect the finality of the order where no claims remained before the district court after it issued the order. *Id.* ¶ 29. Accordingly, the relevant inquiry for the purposes of finality centers on whether the order left anything else for the district court to adjudicate.

¶11    Although it appears counter-factual to conclude that an order remanding the matter to the City Council for further proceedings "ends the controversy between the parties," the controversy ended with respect to what the district court could do. Under *Zions*'s logic, although the controversy still exists between the parties in the administrative forum, the order is final because nothing is left pending before the district court. Here, unlike *Loffredo*, the court disposed of all of the parties' claims, albeit erroneously, when it "reverse[d] and remand[ed] the matter back to the City Council to hold an evidentiary hearing" and then dismissed MSCG's constitutional issues based on that ruling. The court's order did not rule on the merits of MSCG's constitutional argument, but the order did dispose of the case so far as the court was concerned and effectively "end[ed] the controversy between the parties" before the district court. *See Bradbury*, 2000 UT 50, ¶ 9 (citation and internal quotation marks omitted).

¶12    MSCG further asserts that the order is not final based on its own language. Indeed, the last sentence of the order describes the order as a final order "until after the City [Council] holds an evidentiary hearing." Nevertheless, at the hearing the district court reversed and remanded the issues to the City Council, dismissed MSCG's constitutional issues, and then instructed the parties that they would have thirty days to appeal from it. This language, however, is surplusage in the face of other indications that the court intended the order as a final judgment. For these

reasons, we conclude the order is a final appealable judgment that is properly before us. Accordingly, we turn to the merits of the City's appeal.

## II. The District Court Employed the Incorrect Standard in Reviewing the City Council's Revocation Decision.

¶13    The City argues on appeal that the district court used the incorrect standard in reviewing the City Council's business-license-revocation decision. In particular, it contends the court erroneously applied a summary judgment framework to reverse the City Council's decision on the basis that a disputed issue of fact precluded the City Council from making a finding that Reborn is a structural analog of a controlled substance. MSCG agrees. "Whether the trial court employed the proper standards presents a legal question which is reviewed for correctness." *See Chandler v. Blue Cross Blue Shield of Utah*, 833 P.2d 356, 360 (Utah 1992); *see also Searle v. Milburn Irrigation Co.*, 2006 UT 16, ¶ 14, 133 P.3d 382.

¶14    "Judicial review of license revocations by municipalities is limited to a determination whether the municipality acted within its lawful authority and in a manner that is not arbitrary or capricious." *Dairy Prod. Servs., Inc. v. City of Wellsville*, 2000 UT 81, ¶ 42, 13 P.3d 581 (citation and internal quotation marks omitted). This court has indicated that a "municipality's license revocation decision is deemed arbitrary or capricious if it is not supported by substantial evidence in the record." *14th St. Gym, Inc. v. Salt Lake City Corp.*, 2008 UT App 127, ¶ 10, 183 P.3d 262 (citation and internal quotation marks omitted). This standard does not allow the reviewing court to reweigh the evidence, *Dairy Prod. Servs.*, 2000 UT 81, ¶ 42, but requires the court to "consider all the evidence in the record, both favorable and contrary, and determine whether a reasonable mind could reach the same conclusion as the [c]ity," *14th St. Gym*, 2008 UT App 127, ¶ 10.

¶15    Although the district court correctly identified the standard for reviewing the City Council's decision, it did not

analyze whether the City Council's decision was supported by substantial evidence. Instead, the district court found that "there is a disputed issue of fact as to whether the substance 'Reborn' has a substantially similar chemical structure to a controlled substance analog." Because of this "disputed issue of fact," the district court then reversed the City Council's revocation decision for further fact finding. Instead of looking at all the evidence, both favorable and contrary, to determine if a reasonable mind could reach the City Council's decision, the court seems to have reviewed the decision within the summary judgment framework. *See* Utah R. Civ. P. 56(c) (indicating that summary judgment is appropriate if based on the evidence "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law"). Whether there is a dispute in material facts is not relevant to the district court's review of a municipality's business-license-revocation decision. As a consequence, the district court erred by viewing this case through the prism of the summary judgment standard.

### III. Conclusion

¶16    The district court's order was final because it disposed of all of the parties' claims. But the court erred when it failed to determine whether the City Council's business-license-revocation decision was supported by substantial evidence. Accordingly, we vacate the order and remand for the district court to analyze the parties' claims under the correct legal standards.[3]

---

3. The City asks us to independently review the administrative record and to resolve these issues, but we decline to do so without the benefit of the district court's analysis.